**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **KARLA RUIZ and ROLANDO GONZALEZ,** | **Case No.: 4:21-cv-03851** |
| **PLAINTIFFS,** | |
| vs. | |
| **EQUIFAX INFORMATION SERVICES, LLC** **TRANS UNION, LLC,** **EXPERIAN INFORMATION SOLUTIONS,** **INC., AND PROCOLLECT, INC.,** | |
| **DEFENDANTS.** | |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON COUNTS I, II,**
**AND IX AGAINST PROCOLLECT, INC.**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES..................................................................................4

Nature and Stage of this case ...........................................................................5

Statement of Issues to Be Decided by The Court ............................................5

Statement of Undisputed Material Facts...........................................................6

    **Each lease terminated on April 30, 2020** ...............................................7

    **SCP accuses Plaintiffs of holding over.**................................................8

    **SCP's 3 Ledgers on the Plaintiffs' Account**........................................9

    **SCP turned the post lease charge balance of $2,072 over to Procollect to collect from Plaintiffs**...............................................................................10

    **Plaintiffs disputed the debt with the Procollect** .............................11

    **Procollect credit reported the debt and confirmed it as accurate when each Plaintiff disputed it.** ........................................................................11

        Experian ...........................................................................................12

        Equifax .............................................................................................12

ARGUMENTS AND AUTHORITY....................................................................13

    **Standard of Review**................................................................................13

PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT IX AGAINST PROCOLLECT FOR VIOLATING THE FAIR DEBT COLLECTION PRACTICES ACT. ......................................................................................15

    **Procollect violated Plaintiffs' rights under 15 USC 1692e(2) by misrepresenting the character, amount or legal status of the debt.**..............15

        Assuming arguendo that the Plaintiffs were hold over tenants, they could only be Tenants by Sufferance...................................................................15

        As Tenants by Sufferance, Plaintiffs had no liquidated debt to SCP. Procollect was collecting a debt for which there was no legal basis...............17

    **Procollect violated Plaintiffs' rights under 15 USC 1692e(8) by furnishing false credit information to the credit bureaus that Procollect should have been known to be inaccurate.**..........................................................................19

        Procollect knew or should have known that Plaintiffs were Tenants by Sufferance and thus had no obligation to pay anything...................................19

PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR FAIR
CREDIT REPORTING ACT CLAIMS ON COUNTS I AND II DUE TO
DEFENDANT'S FAILURE TO CONDUCT A REASONABLE
REINVESTIGATION INTO THEIR RESPECTIVE DISPUTES. ........................21

**Plaintiffs are entitled to relief under 15 U.S.C. 1681n for willful violation of
the FCRA. ....................................................................................................22**

Procollect's own policies and procedures precluded its investigators from
conducting a reasonable reinvestigation. ........................................................22

Procollect, at all times relevant to the Plaintiffs' numerous disputes, possessed
all of the information that proved the Plaintiffs to be Tenants at Sufferance..24

Procollect never conducted any reasonable or meaningful reinvestigation into
any of the Plaintiffs' disputes. ........................................................................25

**In the alternative, Plaintiffs are entitled to Summary Judgment for
Procollect' s Negligent Violation of the FCRA at 15 USC 1681o. .................27**

PLAINTIFFS HAVE SUFFERED DAMAGES DUE TO DEFENDANT'S
VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES AND THE
FAIR CREDIT REPORTING ACT. ....................................................................28

CONCLUSION ........................................................................................................29

# INDEX OF AUTHORITIES

Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)..............................13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). ...............................................13

*Clark v. Cap. Credit & Collection Servs., Inc., 460 F.3d 1162, 1176 (9th Cir. 2006)* ...........................................................................................................................15

*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) .........14

*Glover v. F.D.I.C., 698 F.3d 139, 149 (3d Cir.2012)*...............................................15

*Glover v. Wells Fargo Home Mortg*., 629 Fed. Appx. 331 (3d Cir. 2015) .............14

*Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 430-431 (4th Cir. 2004)*.............22

*Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 723 (S.D. Tex. 2012) ...................15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986) ......13

*Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 at 52 (2007)*........................................26

*Thompson v. Diversified Adjustment Serv., Inc*., No. CIV.A. H-12-922, 2013 WL 3973976, at *4 (S.D. Tex. July 31, 2013)* ...........................................................15

*Tuttle v. Builes, 572 S.W.3d 344, 353 (2019)* ........................................................16

*United States v. Bormes, 568 U.S. 6, at 8 (2012)* ....................................................27

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) .......................................13

Statutes

15 U.S.C. 1692e(8) ....................................................................................................19

15 U.S.C. 192s-2(b) ...................................................................................................21

15 USC 1681o .............................................................................................................27

15 USC 1692(e) ..........................................................................................................14

Rules

Fed. R. Civ. P. 56(c)...................................................................................................13

Fed. R. Civ. P. 56(e)...................................................................................................13

## Nature and Stage of this case

Plaintiffs have sued Defendant Procollect for violation of the Fair Credit Reporting Act ("FCRA")  at  15 U.S.C 1681s-2(b).  Plaintiffs have alleged that Procollect willfully, or in the alternative, negligently, failed to conduct a reasonable reinvestigation into their disputes in violation of 15 U.S.C 1681n or 1681o.  The Plaintiffs have settled their FCRA claims against the credit bureaus, leaving as the only remaining defendant, Procollect.

Plaintiffs also pled claims against Procollect for violation of the Fair Debt Collection Practices Act ("FDCPA") at 15 USC 1692e(2) alleging that Procollect misrepresented the character, amount or legal status of the debt to the Plaintiffs and credit bureaus.  Plaintiffs also have alleged a violation of 15 USC 1692e(8) against Procollect for knowingly furnishing false information to the credit bureaus.

Discovery has been completed by both parties.

## Statement of Issues to Be Decided by The Court

Assuming the Plaintiffs were holdover tenants, whether the Plaintiffs were tenants at will or tenants at sufferance.

Whether Defendant Procollect violated the Plaintiffs' rights under the Fair Debt Collection Practices Act at 15 U.S.C. 1692e(2) by misrepresenting the

character, amount or legal status of the debt that it attempted to collect from the Plaintiffs.

Whether Defendant Procollect violated the Plaintiffs' rights under the Fair Debt Collection Practices Act at 15 U.S.C. 1692e(8) by communicating information to the Plaintiffs' respective credit bureaus to Experian, Equifax and Trans Union that it knew or should have known was false.

Whether Defendant Procollect violated the Plaintiffs' rights under the Fair Credit Reporting Act at 15 U.S.C. 1581s-2(b) by failing to conduct a reasonable reinvestigation into each of the Plaintiff's disputes that each submitted to the credit bureaus.

If so, whether Defendant Procollect's failure was a willful violation of the Fair Credit Reporting Act at 15 U.S.C. 1681n or a negligent one at 15 U.S.C. 1681o.

### Statement of Undisputed Material Facts

1. On May 11, 2019, Plaintiffs entered into two (2) leases with Gulfstream Manor ("GSM") through its management company, Southern Choice Properties ("SCP"), for a term of 1 year from May 11, 2019 to April 30, 2020.  One lease was for a trailer and the other was for the lot (Ex 1 and Ex 2).

### *Each lease terminated on April 30, 2020*

Each lease gave the Plaintiffs a right to extend each lease if they gave notice to do so. If they did not, then the lease would continue on a month to month basis unless the Plaintiffs provided written notification to not extend the lease.

2. On March 2, 2020, Plaintiffs timely gave written notice of their intention to terminate their leases and to move out of the property by the end of their lease term on April 30, 2020 ("Lease Termination Notice") in compliance with both leases (Ex 3). The form of the Lease Termination Notice was supplied by SCP (Ex 4 – p 27). The Plaintiffs hand delivered this notice to SCP's agent on that same day and SCP acknowledges that it received this notice (Ex 4 - p 30).

3. On March 7, 2020, SCP sent an email to all tenants stating that due to the pandemic, the management offices will be closed. (Ex 5)

4. On April 21, 2020, the Plaintiffs rented a storage space for their home goods (Ex 4, p 32 and Ex 6).

5. On April 22, 2020, the Plaintiffs rented a U-Haul truck (Ex 4, p 21 and Ex 7) to move their goods out of their rental unit at SCP.

6. On April 23, 2020, the Plaintiffs packed up all their things from the rental unit and moved them into the rented storage space (Ex 4, p 21 and Ex 7). Plaintiffs then drove on to Texas to reside with family (Ex 4, p 24).

7

7. Due to the pandemic SCP offices were closed (Ex 5).  As Plaintiffs were leaving the rental property, Plaintiff Rolando Gonzalez, with his wife present, co-Plaintiff Karla Ruiz,  called SCP asking how to return the key to their unit (Ex 4, p 165).  They were instructed by SCP to place the key in an envelope with their name and unit number and deposit key in the SCP drop box.  (Id. at 165-166).   The Plaintiffs followed the instructions of SCP and deposited the key in the SCP drop box in an envelope with their names and lot number. (Ex 4, p 165, and Ex 8, p 140).

*SCP accuses Plaintiffs of holding over.*

8. SCP has accused the Plaintiffs' of holding over because it did not receive the unit keys.  SCP only discovered the unit vacated on May 31, 2020 when someone from SCP walked through it.  (Ex 9, p 49).  SCP's belief that that the Plaintiffs held over is based solely on a document in its system.

9. SCP charged the Plaintiffs for lot rent, unit rent and utilities for the post lease periods of May 2020 and June 2020 because SCP believes that Plaintiffs allegedly stayed in the property until May 31, 2020 (Ex 9, p 49).

*SCP's 3 Ledgers on the Plaintiffs' Account*

10. SCP kept 3 ledgers on the Plaintiffs; one for trailer rent ("Trailer Ledger"), one for lot rent ("Lot Ledger") and one for utilities ("Utility Ledger") (Ex 10, 11, and 12).  The Trailer Ledger shows that during the first 7 months of the lease, SCP charged rent on the 1st of the month and attempted to collect that money via ACH from Rolando Gonzalez's bank account the same day.  However, during the last 5 months of the lease, Gonzalez paid the unit rent via check (Ex 10).

11. The Trailer Ledger also shows that for the post lease period, SCP charged the Plaintiffs rent on May 1st but made no effort to collect it.  On June 1, 2020, SCP charged the Plaintiffs rent for June and then attempted to collect only that month that via ACH (a practice that was discontinued during the lease term).  However, Gonzalez reversed that payment on June 4, 2020.

12. The Lot Ledger shows that SCP charged the Plaintiffs for lot rent and related costs by the 1st of each month (Ex 11).  These charges were paid by via ACH by the first day of each month.  However, the post lease charges for May 2020 and June 2020 were simply accrued and posted to the account for those respective months.  There were no late fees associated with either of these post lease months even though there was no payment in those months.  These charges went uncollected until June 1, 2020, when SCP again, attempted an ACH

withdrawal from Gonzalez's account for $406.  He simply and promptly

disputed and reversed those charges.

13. The Utility Ledger shows that SCP charged the Plaintiffs with their share of

utilities by the 1st of each month (Ex 12).  These charges were paid by check,

most of the time, in the same month.  When the charge was not timely paid by

the Plaintiffs, SCP charged a late fee and even disconnected the utilities (Ex 12

– Feb 12, 2020 reconnect fee and late fee).  For the post lease period these

charges were assessed on May 1, 2020, June 1, 2020 and July 1, 2020 and none

of those charges was paid, nor were any late or reconnect fees assessed.

14. In total, SCP has charged the Plaintiffs the following charges over to Procollect,

**<u>all of which are post lease charges only</u>**:

- Trailer  rent of $1,211;
- Lot rent $791; and
- Utilities of $70.80.

**These charges total $2,072.80.**[1]

*SCP turned the post lease charge balance of $2,072 over to Procollect to collect from Plaintiffs.*

15. On July 1, 2020 SCP turned this debt of $2,072 over to Procollect to collect

from Plaintiffs (Ex 13).  At that time, SCP also turned over the signature pages

---

[1] Procollect's demand letters in Exhibits 16 and 17 demand a lesser balance of $2,002.  Apparently, during the collection process, SCP changed the balance due by adding more costs and assigning it to Procollect.  Because Plaintiffs were, at best, Tenants at Sufferance as discussed below, no liquidated balance was due.

of the leases, all three ledgers and the Lease Termination Notice to Procollect

(Ex 9, p 51.)

16. In September of 2020, Procollect began to credit report these debts to Experian,

Equifax and Trans Union, on each Plaintiff's credit reports.

17. On November 2, 2020, Gonzalez emailed both leases and Lease Termination

Notice to Procollect in an effort to prove that the Plaintiffs are not indebted to

SCP (Ex 15).

### Plaintiffs disputed the debt with the Procollect

18. In October 2020, Procollect called Gonzalez to collect the debt.  (Ex 4, p 35).

He disputed it (Ex 4, 35).  On October 1, 2020, Procollect sent the ledgers to the

Plaintiffs claiming that they owe the balance of $2,072 to GSM on their leases

(Ex 16).

19. On November 3, 2020, in response to the Plaintiffs' dispute, Procollect again

sent the ledgers to the Plaintiffs, claiming that they owed a balance of $2,072

(Ex 17).

### Procollect credit reported the debt and confirmed it as accurate when each Plaintiff disputed it.

20. On August 6, 2021, Karla Ruiz, through counsel, sent a letter to Trans Union

and Experian disputing the debt reporting by Procollect. (Ex 18, 19).

21. On September 24, 2021, Gonzalez sent a letter to <u>Experian</u>, <u>Equifax</u> and <u>Trans Union</u>, disputing the Procollect debt. (Ex 20, 21, 22).

22. In all of these dispute letters, each Plaintiff explained to the credit bureaus that Plaintiffs leased property for a 1-year period ending on April 30, 2020 and moved out timely.  Plaintiffs attached the Lease Termination Notice to each.

### Experian

23.    On August 25, 2021, Experian receives Ruiz's dispute letter and forwarded notice of it to Procollect (Ex 23).  Procollect responded to that dispute on September 10, 2021 by verifying the debt as valid and accurate.  Id.

24.    On October 13, 2021, Experian receives Gonzalez's dispute letter and forwarded notice of the Plaintiff's dispute to Procollect (Ex 24).  Procollect responded to that dispute on October 14, 2021 by verifying the debt as valid and accurate.  Id.

### Equifax

25. On October 26, 2021, Equifax sent an automated consumer dispute verification form ("ACDV") to Procollect in response to the dispute letter it received on behalf of Gonzalez.  Procollect verified the debt as accurate on November 18, 2021. (Ex 25).

26. In response to a previous dispute by Ruiz, Equifax received verification of the debt on January 8, 2021 from Procollect (Ex 26).

## ARGUMENTS AND AUTHORITY

### *Standard of Review*

A court renders summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of informing the court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such absence. *Celotex*, 477 U.S. at 323. However, all evidence and reasonable inferences made must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). The party defending against the motion for summary judgment cannot defeat the motion unless he provides specific facts that demonstrate a genuine issue of material fact such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Mere assertions of a factual dispute unsupported by

13

probative evidence will not prevent summary judgment. *Id.* at 249–50. In other words, conclusory statements, speculation, and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Further, a court has no duty to search the record for evidence of a genuine issue. Fed. R. Civ. P. 56(c)(1), (3).

15 USC 1692(e) of the **Fair Debt Collection Practices Ac**t states:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ***
>
> (2) The false representation of—
>
>> (A) the character, amount, or legal status of any debt; or
>>
>> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
>>
>> ***
>
> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false . . .

While the consumer bears the burden of proving that the stated amount of the debt is false, *Glover v. Wells Fargo Home Mortg.*, 629 Fed. Appx. 331 (3d Cir. 2015), there is no requirement that the consumer prove that the collector intentionally misstated the amount. *Clark v. Cap. Credit & Collection Servs., Inc.,*

14

*460 F.3d 1162, 1176 (9th Cir. 2006).* Even an unintentional misrepresentation of an amount of debt can violate the law. *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 723 (S.D. Tex. 2012).

The FDCPA is generally characterized as a strict liability statute because it imposes liability without proof of an intentional violation." *Thompson v. Diversified Adjustment Serv., Inc.*, No. CIV.A. H-12-922, 2013 WL 3973976, at *4 (S.D. Tex. July 31, 2013). Courts have generally referred to the FDCPA as a "strict-liability statute" that makes debt collectors liable even for inadvertent violations. See *Glover v. F.D.I.C., 698 F.3d 139, 149 (3d Cir.2012).*

## PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT IX AGAINST PROCOLLECT FOR VIOLATING THE FAIR DEBT COLLECTION PRACTICES ACT.

### *Procollect violated Plaintiffs' rights under 15 USC 1692e(2) by misrepresenting the character, amount or legal status of the debt.*

Assuming arguendo that the Plaintiffs were hold over tenants, they could only be Tenants by Sufferance.

The trailer lease, at paragraph 2 states:

> In the event the Lessee has made timely payments (by the due date) during the initial 12 month term of lease, Lessee shall have the right to elect to extend the lease term for an additional 12 month term at the current rental rate. Lessee may exercise the right to extend the term of the Lease by providing Lessor with written notice of the election at least 30 days prior to the termination of the lease term. ***Should Lessee not provide Lessor with such notice, the Lease shall be automatically extended on a month-to-month basis; which may be***

15

> *terminated by either party upon 30 days written notice to the other party*.  (Ex __ paragraph 2 – emphasis added).

The lot lease contains a similar provision as follows:

> Lessee **shall** have the right to elect to extend the lease tern, for an additional 6 month term at the current rental rate. Lessee may exercise the right to extend the term of the Lease by providing Lessor with written notice of the election at least 30 days prior to the termination of the lease term. ***Should Lessee not provide Lessor with such notice, the Lease shall be automatically extended on a month-to-month basis; which may be terminated by either party upon 30 days written notice to the other party***.  (Ex __ paragraph 2 – emphasis added).

Each lease gave the Plaintiffs the right to extend the term if they provided notice at least 30 days prior to expiration of the lease.  If the Plaintiffs failed to give such notice to extend, then the lease would automatically extend on a month to month basis unless terminated by either party on 30 days written notice to the other party.

In this case, the Plaintiffs gave SCP the Lease Termination Notice on March 2, 2020, informing it that they did not intend to renew the lease and equally, this prevented the lease from continuing on a month to month basis. (Ex 3).  The parties do not dispute that the Lease Termination Notice was given to the SCP timely (Ex 9, p 34).  Hence, even if the Plaintiffs held over, which they did not, they would at best, be Tenants at Sufferance.

The Texas Court of Appeals is instructive and determinative on this issue in *Tuttle v. Builes, 572 S.W.3d 344, 353 (2019)*), which held that a tenant who

16

continues to occupy leased premises after expiration or termination of its lease is a "holdover tenant."  The status and rights of a holdover tenant, however, differ depending on whether the tenant becomes a 'tenant at will' or a 'tenant at sufferance.' A tenant at sufferance is "[a] tenant who has been in lawful possession of property and wrongfully remains as a holdover after the tenant's interest has expired. *Id*.

### As Tenants by Sufferance, Plaintiffs had no liquidated debt to SCP.   Procollect was collecting a debt for which there was no legal basis.

With a hold over tenant, an implied agreement to create a new lease using the terms of the prior lease may arise if both parties engage in conduct that manifests such intent.  For example, if the tenant remains in possession and continues to pay rent, and the landlord, having knowledge of the tenant's possession, continues to accept the rent without objection to the continued possession, the tenant is a tenant at will, and the terms of the prior lease will continue to govern the new arrangement absent an agreement to the contrary.  *Id. at 354.*

In this case, its indisputable that there was no agreement between the parties for the Plaintiffs to stay on the property beyond the lease period expiring on April 30, 2020.  The Plaintiffs manifested no conduct to show such intention.  In fact, to the contrary, the undisputed facts prove that there was no such agreement:

17

- The Plaintiffs tendered the Lease Termination Notice on March 2, 2020 and it was received by SCP; (Ex 3)
- Plaintiffs testified that they moved from the property on April 24, 2020 and took all of their belongings with them (Ex 4, p 24  and Ex 8,p p 91-92).
- The ledgers show that when SCP attempted to collect post lease rent from Rolando, he reversed the charges; (Ex 10, and 11)
- No post lease rent payments were offered by or paid for by the Plaintiffs.

Its indisputable that there was no agreement by the parties to stay on the property after April 30, 2020.  Conclusively, even if Plaintiffs had stayed past April 30, 2020, which they did not, they would have been Tenants at Sufferance. As such, no rent was due from them until such reasonable amount, if any, would have been fixed by judgment.  In a Tenancy at Sufferance, prior lease terms do not control.  Rather, when the holdover tenant is a Tenant at Sufferance, the proper measure of damages is the reasonable rental value of the property during the holdover period. *Builes at 356*.

In this case, even if SCP were entitled to additional rent, it would have had to obtain a judgment to establish what the reasonable value of rent would have been owed by the Plaintiffs.  Of course, had SCP done so, the Plaintiffs would have had the same opportunity to present evidence to that court as they now present to this one; namely that they moved out timely, present documents to prove that they moved out timely including the U-Haul truck and storage space rental.  In short, the Plaintiffs would have been able to prove that they owed nothing to SCP.

As Tenants at Sufferance, Procollect's attempt to collect $2,072 from the

18

Plaintiffs and credit reporting of the baseless amount, was a misrepresentation of the amount, character and legal status of debt to the Plaintiffs in violation of 15 USC 1692e(2) and e(8). Plaintiffs are entitled to summary judgment on Count IX of their claim for violation of the FDPCA at 15 USC 1692e(2).

*Procollect violated Plaintiffs' rights under 15 USC 1692e(8) by furnishing false credit information to the credit bureaus that Procollect should have been known to be inaccurate.*

15 U.S.C. 1692e(8) is violated when a debt collector communicates credit information which is known or which should be known to be false.  In this case, Plaintiffs have proven that the credit information is false.  Defendant Procollect admits that it furnished this information to all three credit bureaus on both Plaintiffs.  (GD 77).  But this is not enough to satisfy this section of the statute. Plaintiffs must show, and can, that Procollect either knew or should have known that this information was false.

Procollect knew or should have known that Plaintiffs were Tenants by Sufferance and thus had no obligation to pay anything.

By October 27, 2020, Procollect had both leases, all 3 ledgers and the Plaintiffs' Lease Termination Notice.  It was also aware that the Plaintiffs had disputed the charges.  A reasonable person looking at these documents would have known that the charges all related to *post lease* activity and that the Plaintiffs disputed these charges.

19

Defendant Procollect is in the business of collecting consumer debts including those that come from landlords such as SCP.  Indeed, as discussed below, it has a policy and procedure for responding to disputes that come from tenants. Defendant Procollect should have had a policy to determine whether a debt that it was assigned to collect came from a Tenant at Will or a Tenant at Sufferance as the difference is huge.  It's the difference between Procollect's client being owed a fixed balance or an unliquidated one such as it the case before this Court.

The Defendant Procollect's own corporate representative is a practicing lawyer (Ex 14, p 12).  There is no excuse for Procollect not knowing that Plaintiffs were, at best, Tenants at Sufferance from looking at the leases and ledgers.  These documents gave anyone reading them notice that the charges were all post lease termination.  The Lease Termination Notice would have put anyone on notice that the Plaintiffs did not intend to renew the leases.  Procollect should have known that the charges that it was assigned to collect were legally baseless.  Yet, it repeatedly confirmed the debt as accurate on the Plaintiffs' respective credit reports with each credit bureau.  Procollect should have known and was in an excellent position to know that the debt that it was reporting to the credit bureaus was false.

## PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR FAIR CREDIT REPORTING ACT CLAIMS ON COUNTS I AND II DUE TO DEFENDANT'S FAILURE TO CONDUCT A REASONABLE REINVESTIGATION INTO THEIR RESPECTIVE DISPUTES.

.

The Fair Credit Reporting Act at 15 U.S.C. 1681s-2(b) states:

Duties of Furnishers of Information upon Notice of Dispute

(1) *In general.* After receiving notice pursuant to section 611(a)(2) [§ 1681i] of a dispute
with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall:

    (A) conduct an investigation with respect to the disputed information;

    (B)  review all relevant information provided by the consumer

    (C)  reporting agency pursuant to section 611(a)(2) [§ 1681i];

    (D) report the results of the investigation to the consumer reporting agency;

    (E) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

    (F)  if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly–

        (i) modify that item of information;

        (ii) delete that item of information; or

        (iii) permanently block the reporting of that item of information.

As a furnisher of information to the credit bureaus, this duty applied to Procollect whenever it received a dispute from the Plaintiffs about the information it was suppling.  In this case, Procollect received the following disputes:

a.  Experian as to Rolando on September 13, 2020 (Ex 20).
b.  Experian as to Karla on August 25, 2020 (Ex 19)
c.  Equifax as to Rolando on October 26, 2020 and December 15, 2020 (Ex 25)

In each of these instances, Procollect was required to conduct a reasonable reinvestigation into each of the Plaintiff's dispute letters.  The plain meaning of "investigation" clearly requires some degree of careful inquiry by creditors.  § 1681s–2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified.  *Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 430-431 (4th Cir. 2004).*

Procollect's reinvestigation, as the evidence shows, fails as a matter of law.

***Plaintiffs are entitled to relief under 15 U.S.C. 1681n for willful violation of the FCRA.***

### Procollect's own policies and procedures precluded its investigators from conducting a reasonable reinvestigation.

Procollect's policy and procedure with respect to reinvestigating tenant disputes is as follows:

For verification of tenant apartment/leasing debts following a written dispute received from an alleged debtor/consumer or ACDV, ProCollect requires that you perform a reasonable investigation to determine whether the information being reported to the Consumer Reporting Agencies is incomplete or inaccurate prior to further collection efforts. If the information reported is incomplete or inaccurate, ProCollect must update the information reported.

**If, after your investigation, the information and documents available from the alleged debtor, the Creditor (and TLO if used), are in conflict, you are not required to resolve that conflict. You are entitled to rely on the Creditor's documents and representations when reporting the debt**, but you need to verify any amounts due with the Creditor as part of that investigation.

The first paragraph merely recites Procollect's duties under the FCRA to conduct a reasonable reinvestigation.

The second paragraph, however, prevents any reasonable reinvestigation from happening.  This policy states that if there is a conflict between the creditor and the consumer, that Procollect can merely rely upon the creditor and simply verify the amount.  Of course, there is always going to be a conflict between a creditor and a consumer when a consumer disputes the reporting of an account.  By definition, these documents will always be in dispute.  Procollect's policy allows the investigator to disregard the consumer's documents and simply rely upon the creditor's documents and ignore the dispute.  That is exactly what happened in this case.

Creditor SCP alleged that the Plaintiffs owed a debt because they held over.  Plaintiffs produced documentation to show that they terminated the lease and intended to move out by April 30, 2020, and said that they did move out by that

date.  These documents were in conflict.  Procollect's policies and procedures allow it to simply disregard the Plaintiffs' disputes.  This is not reasonable reinvestigation as required by the FCRA.  A reasonable reinvestigation would have required Procollect to inquire from SCP for verification as to when the Plaintiffs moved out.  SPC testified that Procollect never took this step.  (Ex 9, p 51).  In fact, the move out sheet in this case shows that Plaintiffs moved out by April 30, 2020. (Ex 27).  The fact that Procollect never bothered to confirm when the Plaintiffs moved out, coupled with it ignoring a document provided by SCP proving that Plaintiffs moved out on April 30, 2020, conclusively show that Procollect either failed to conduct a reasonable reinvestigation or never conducted one at all.

### Procollect, at all times relevant to the Plaintiffs' numerous disputes, possessed all of the information that proved the Plaintiffs to be Tenants at Sufferance.

Procollect's corporate representative acknowledged that the debt in this case related to 2 months beyond the lease term, after previously declining to acknowledge that fact. (Ex 14, p 50).  He also acknowledged that SCP did not provide any pictures or videos proving that Plaintiffs did not move out timely.  *Id*. As noted earlier, it also failed to simply inquire of SCP verification of when the Plaintiffs moved out.  Procollect testified that in its reinvestigation, it reviewed the

moveout statement. (Ex 14, p 88).  But that statement shows that Plaintiffs moved out on April 30, 2020. (Ex 27).

The evidence developed in this case can only lead this court to the conclusion that Procollect did not conduct any investigation or if it did, not one that was reasonable.

### Procollect never conducted any reasonable or meaningful reinvestigation into any of the Plaintiffs' disputes.

Procollect never conducted a reasonable reinvestigation.  Its agent testified as follows:

a. He refused to "interpret"  the trailer lease when asked about it (Ex 14, p 32);
b. He does not know if anyone at Procollect ever reviewed the leases (Ex 14, p  33)
c. He refused to "interpret" the lot lease (Ex 14, p  35)
d. does not know if anyone at Procollect ever reviewed the lot lease when asked about it (Ex 14, p  35);
e. Stated that Procollect was only relying on SCP "as per the FDCPA" and if Plaintiffs' counsel had questions about any of the above, that counsel should ask SCP; *Id*.
f. He refused to acknowledge that the ledgers contained 2 months of charges beyond the lease expiration date (GN 40); (although he recanted this testimony at (Ex 14, p  50);
g. He refused to acknowledge that as of April 2020, the ledgers reflected that the Plaintiffs had fulfilled their obligations to SCP (Ex 14, p  40);
h. He again testified that Procollect merely relies upon what is told to it by its client (Ex 14, p  42-43);
i. He admitted that Procollect did not rely on anything other than its client's statement (Ex 14, p  43-44);

Procollect merely relied upon what its client, SCP told it about the debt, ignored the leases, ledger and Lease Termination Notice and simply confirmed the debt as accurate to the credit bureaus.  As a matter of law, this is not any kind of reasonable reinvestigation.  Procollect showed a reckless disregard for its duties under the law.

In *Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47 at 52 (2007),* the Supreme Court held that reckless disregard of a furnisher's duties under the FCRA is a willful violation of the statute.  The Court established an objective standard of recklessness in civil cases generally, defining recklessness as "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.  *Id at 68*.  With specific reference to statutory mandates, the Court held that "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.  *Id. at 69*.

In this case, Procollect was obligated to conduct a reasonable reinvestigation.  Such an investigation would have included examining the leases, the ledgers, the Lease Termination Notice and actually reviewing these documents. It would also have necessarily included Procollect actually contacting its client to verify when it believes the Plaintiffs moved out of the space because the Moveout

sheet supplied by SCP was in conflict of SCP's position that the Plaintiff's held over.  Procollect did not do anything of these things.  Its failure to analyze these documents created an unjustifiably high risk of harm to the Plaintiffs that was obvious and it should have been known.

Procollect's disregard of its obligations under the statute was willful, entitling Plaintiffs to summary judgment under 15 USC 1683n.

### *In the alternative, Plaintiffs are entitled to Summary Judgment for Procollect's Negligent Violation of the FCRA at 15 USC 1681o.*

The FCRA imposes civil liability for willful or negligent noncompliance with its requirements: "Any person who willfully fails to comply" with the Act "with respect to any consumer," "is liable to that consumer" for actual damages or damages "of not less than $100 and not more than $1,000," as well as punitive damages, attorney's fees, and costs. *United States v. Bormes, 568 U.S. 6, at 8 (2012).*

In this case, Procollect's reinvestigation was so completely shoddy that if the Court does not find, as a matter of law, that it disregarded its duties under the law rose to a willful violation under 15 USC 1681n, the court should at least find a negligent violation under 15 USC 1681o.

## PLAINTIFFS HAVE SUFFERED DAMAGES DUE TO DEFENDANT'S VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES AND THE FAIR CREDIT REPORTING ACT.

Rolando Gonzalez testified that due to the Defendant's violation of the FDCPA and FCRA, that he has not permitted to apply for housing subsequent to leaving the SCP property.  (Ex 4 - p 49, 176).  He suffered undue stress because he could not provide an apartment for his family. Id at 95-96.  He was forced to rent an apartment through his brother in law because he could not get an apartment in his own name.  Id at 97.  He found this humiliating.  Id at 107.  He went into therapy for this stress and spoke with his therapist every month.  Id at 100, 102. He was humiliated every time he was denied credit.  Id at 104.  He suffered from anxiety.  Id at 109.

Karla Ruiz testified that due to the Defendant's violation of her rights under the FDCPA and FCRA, she suffered damages as well including suffering from migraine headaches (Ex 8 - p 62), lost sleep (Id at 64) and she sought help from a therapist.  Id at 81.  She had great emotional damages from the stress caused by the defendant and was manifest through the migraines she suffered.  Id at 84.  She was prevented from getting a home for herself and family.  Id at 59.  She was also prevented from enrolling her kids in school in the fall of 2020 because she had no residence.  Id at 59.  She also suffered from anxiety due to the defendants'

28

violation of her rights under the FDCPA and FCRA.  Id at 61.  She treated with a

psychologist because of these credit issues.  Id at 62.

## CONCLUSION

Plaintiffs are entitled to Summary Judgment as there is no genuine issue of

any material fact that Procollect violated the Plaintiffs' rights under the FDCPA by

demanding money from them that was not due and by reporting false credit

information to the credit bureaus.

Plaintiffs are also entitled to Summary Judgment on the Fair Credit

Reporting Act claims for Defendants' negligent and willful violation of the law by

so recklessly disregarding their duties to conduct a reasonable reinvestigation into

the Plaintiffs' dispute.

Respectfully submitted,

Dated: April 13, 2023                    HILLTOP LAW FIRM.

By: /s/ Cy T. Hainey
Cy T. Hainey, Esq.
P.O. Box 9096
Phoenix, Arizona 85068
Tel: (602) 466-9631
Fax: (602) 466-9631
cy@hilltoplawfirm.com
Counsel for Plaintiffs
Karla Ruiz and Rolando
Gonzalez

29

**Proof of Service**

I, Cy Hainey, hereby state that on <u>April 13, 2023</u>, I served a copy of the within pleading upon all counsel as their addresses appear of record via the Court's CM/ECF system.

<u>/s/ Cy Hainey</u>