IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KARLA RUIZ and ROLANDO GONZALEZ, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CASE NO. 4:21-cv-03851 |
| EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and PROCOLLECT, INC., | § § § § § | |
| *Defendants*. | § § | |

---

**DEFENDANT PROCOLLECT, INC.'S MOTION FOR
SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

---

ProCollect, Inc. ("Defendant" or "ProCollect") files its Motion for Summary Judgment

and Brief in Support, pursuant to FED. R. CIV. P. 56 and shows as follows:

# TABLE OF CONTENTS

I.      Nature and Stage of Proceeding ........................................................................ 1

II.     Issues to be Ruled on by the Court and Applicable Standard of Review ........................ 1

        A.   Issues to be Ruled on ...................................................................... 1

        B.   Standard of Review .......................................................................... 2

III.    Summary of the Argument .................................................................................. 3

IV.     Summary Judgment Evidence .............................................................................. 4

V.      Statement of Uncontroverted Facts ...................................................................... 4

        A.   The Debt ............................................................................................ 4

        B.   Referral of the Debt for Collection ................................................... 5

        C.   Plaintiffs' Dispute of the Debt and ProCollect's Reasonable Investigation of the Debt ........................................................................................ 6

VI.     Argument and Authorities .................................................................................. 12

        A.   The summary judgment evidence conclusively proves that ProCollect conducted a reasonable investigation, and the information ProCollect reported to the CRAs was accurate; therefore, as a matter of law did not violate the FCRA. ........................................................................ 12

             1.   Plaintiffs' Allegations ............................................................ 12

             2.   As a matter of law, ProCollect did not violate the FCRA, because the debt ProCollect reported to the CRAs is valid ............................ 13

             3.   Even if the information reported was incorrect, as a matter of law, ProCollect did not violate the FCRA, because it conducted a reasonable investigation of Plaintiffs' dispute of the debt before continuing to report it to the CRAs ................................................ 14

        B.   The summary judgment conclusively proves that ProCollect did not make any false or misleading representations in collection of the debt and that it conducted a reasonable investigation of the debt such that it did not violate the FDCPA as a matter of law. ...................................................... 20

             1.   Plaintiffs' Allegations ............................................................ 20

             2.   As a matter of law, there was no inaccuracy in the debt information, so ProCollect did not make any false or misleading misrepresentations and, therefore, did not violate the FDCPA. .................................... 20

             3.   Even if Plaintiffs did not owe the debt, as matter of law, ProCollect did not violate the FDCPA because it conducted a reasonable

investigation of Plaintiffs' dispute of the debt before resuming
collection actions. ....................................................................... 23

# TABLE OF AUTHORITIES

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .......... 3

*Avery v. Gordon*, No. 08-139-HU, 2008 U.S. Dist. LEXIS 86811 (D. Or. 2008)....................... 28

*Baldeosingh v. TransUnion, LLC*, No. 8:20-cv-925-WFJ-JSS, 2021 U.S. Dist. LEXIS 61726, 2021 WL 1215001 (M.D. Fla. March 31, 2021) ...................................... 17

*Batterman v. BR Carroll Glenridge, LLC*, 829 F. App'x 478 (11th Cir. 2020) .......................... 17

*Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383 (D. Del. 1991) ........................................ 27, 28

*Belair v. Holiday Inn Club Vacations Inc.*, No. 6:21-cv-165-WWB-DCI, 2022 U.S. Dist. LEXIS 235853 (M.D. Fla. 2022)........................................................................... 26

*Bleich v. Revenue Maximization Group, Inc.*, 233 F. Supp. 2d 496 (E.D.N.Y. 2002) ................. 27

*Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611 (6th Cir. 2012) .................................................. 16

*Butnick v. Experian Info. Sols., Inc.*, 2021 U.S. Dist. LEXIS 21926, 2021 WL 395808 (E.D.N.Y. 2021)............................................................................................................ 22

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ..................... 2

*Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999)................................................................. 29

*Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162 (9th Cir. 2006).............................. 27

*Denan v. Trans Union LLC*, 959 F.3d 290 (7th Cir. 2020) ......................................................... 18

*Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 462 (M.D. La 1996)..................... 26, 27, 28

*Garey v. BWW Law Grp., LLC*, 2021 U.S. Dist. LEXIS 190885, 2021 WL 4521329 (D. Md. 2021) ................................................................................................................. 18

*Garland v. Marine Credit Union*, 2018 U.S. Dist. LEXIS 183619, 2018 WL 5313769 (E.D. Wis. 2018)............................................................................................................ 19

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009) ....................................... 16

*Hall v. LVNV Funding, LLC*, No. 6:16cv36, 2017 U.S. Dist. LEXIS 214326, 2017 WL 6403049 (E.D. Tex. Aug. 11, 2017) .............................................................................. 16

*Holden v. Holiday Inn Club Vacations Inc.*, No. 6:19-cv-2373-CEM-EJK, 2022 U.S. Dist. LEXIS 62830 (M.D. Fla. 2022) ............................................................................. 17, 22

*Holland v. Chase Bank United States, N.A.*, 475 F. Supp. 3d 272 (S.D.N.Y. 2020).................... 18

*Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42 (2d Cir. 2018) (citation and quotations omitted), *cert. denied*, 139 S. Ct. 1282, 203 L. Ed. 2d 280 (2019)..................... 24

*Hulse v. Ocwen Federal Bank*, 195 F. Supp.2d 1188 (D. Or. 2002) ........................................... 28

*Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 770 F. App'x 452 (11th Cir. 2019) ........... 14, 19, 22

*Jenkins v. Union Corp.*, 999 F. Supp. 1120 (N.D. Ill. 1998) ........................................ 28

*Leones v. Rushmore Loan Mgmt. Servs., LLC*, 2017 U.S. Dist. LEXIS 204157, 2017 WL 6343622 (S.D. Fla. Dec. 11, 2017) ................................................................ 20

*Mohnkern v. Equifax Info. Servs., LLC*, No. 19-CV-6446L, 2021 U.S. Dist. LEXIS 218532 (W.D.N.Y. 2021) ...................................................................... 18, 22

*Ossipova v. Pioneer Credit Recovery, Inc.*, 2019 U.S. Dist. LEXIS 214455, 2019 WL 6792318 (S.D.N.Y. 2019) ......................................................................... 23

*Ostiguy v. Equifax Info. Servs., LLC*, No. 5:16-CV-790-DAE, 2017 U.S. Dist. LEXIS 74746, 2017 WL 1842947 (W.D. Tex. May 4, 2017) .......................................... 17

*Palmer v. Online Info. Servs., Inc.*, Civ. A. No. 6:19-cv-00352-JCB-JDL, 2020 U.S. Dist. LEXIS 237439, 2020 WL 7658063 (E.D. Tex. Nov. 9, 2020), *adopted by* 2020 U.S. Dist. LEXIS 236612, 2020 WL 7388963 (E.D. Tex. Dec. 16, 2020) .................................. 21

*Palmer v. Procollect, Inc.*, No. 6:19-CV-82-JDK, 2020 U.S. Dist. LEXIS 147313 (E.D. Tex. 2020) .............................................................................................. 21

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007)... 14, 15

*Smith v. Transworld Sys., Inc.*, 953 F.2d 1025 (6th Cir. 1992) .................................... 28

*Spencer v. Specialized Loan Servicing, LLC*, 2021 U.S. Dist. LEXIS 194497, 2021 WL 4552548 (N.D. Tex. 2021) ................................................................... 15, 21, 22

*Thompson v. Transunion Data Sols., LLC*, 2021 U.S. Dist. LEXIS 91064, 2021 WL 1923409 (N.D. Ill. 2021) .......................................................................... 18

*Wilson v. SunTrust Bank, Inc.*, 533 F. Supp. 3d 1363 (S.D. Ga. 2021) ........................ 17

**Statutes**

15 U.S.C. § 1681 .......................................................................................................... 1

15 U.S.C. § 1681s-2(b)(1) ........................................................................................... 15

15 U.S.C. § 1692 .......................................................................................................... 1

15 U.S.C. § 1692e(10) ................................................................................................. 24

15 U.S.C. § 1692e(2)(A) ......................................................................................... 24, 27

15 U.S.C. § 1692e(5) ................................................................................................... 24

15 U.S.C. § 1692e(8) ................................................................................................... 27

15 U.S.C. § 1692f ........................................................................................................ 24

## DEFENDANT PROCOLLECT, INC.'S MOTION FOR
## SUMMARY JUDGMENT AND BRIEF IN SUPPORT

### I.    NATURE AND STAGE OF PROCEEDING

Plaintiffs, as consumers, have brought this action against ProCollect, a debt collector and data furnisher of credit information, for alleged violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*., and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., related to ProCollect's attempts to collect an alleged debt from Plaintiff regarding amounts owed to a creditor under Plaintiffs' lease of a trailer home and lot. Plaintiffs also sued Defendants Equifax Information Services, Inc. ("Equifax"), Experian Information Solutions, LLC ("Experian"), and Trans Union, LLC ("Trans Union") (collectively, "Credit Reporting Agencies" or "CRAs") for violations of the FCRA. Plaintiffs have settled their claims against those parties, and the Court has dismissed the cases against them without prejudice, pending settlement completion. Docs. 61 & 62. The deadline for dispositive motions is April 21, 2023, and Docket Call is set for May 9, 2023. Doc. 55. Discovery is complete.

### II.    ISSUES TO BE RULED ON BY THE COURT AND APPLICABLE STANDARD OF REVIEW

#### A.  Issues to be Ruled on

ProCollect asks the Court to rule on the following issues:

1. Does the summary judgment evidence conclusively prove that the debt was valid such that ProCollect's reporting the debt to the CRAs did not violate the FCRA as a matter of law?

2. Does the summary judgment evidence conclusively prove that the information ProCollect reported to the CRAs was accurate, such that ProCollect did not violate the FCRA as a matter of law?

3. Does the summary judgment evidence conclusively prove that ProCollect

conducted a reasonable investigation of any factual inaccuracies in the debt as required by the FCRA, such that ProCollect did not violate the FCRA as a matter of law?

4. Does the summary judgment conclusively prove that there was no inaccuracy in the debt information ProCollect reported, so that ProCollect did not make any false or misleading representations concerning the debt and, therefore, did not violate the FDCPA as a matter of law?

5. Does the summary judgment evidence conclusively prove that, even if Plaintiffs do not owe the debt, ProCollect conducted a reasonable investigation of the validity of the debt such that ProCollect's reporting to the CRAs did not violate the FCRA as a matter of law?

**B. Standard of Review**

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 2556, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The evidence favoring the nonmoving party must be more than "merely colorable." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).

### III.  SUMMARY OF THE ARGUMENT

Defendant ProCollect is a debt collector who also furnishes account information to credit reporting agencies such as Defendants Experian, Trans Union, and Equifax. Plaintiffs were holdovers on their Leases that were set to expire on April 30, 2020 (one was Lease for the Lot, and one was for the Trailer Home) with Gulf Stream Manor Phase 2 Homes, LLC managed by Southern Choice Properties, LLC ("collectively the "Original Creditor"), Plaintiffs incurred additional charges under the Leases for an additional month for rent for May 2020, an additional month for failure to provide correct notice of intent to vacate, and utilities for April and May 2020, all of which comprise the debt. ProCollect alleges that the debt is accurate per the Original Creditor. Because the debt is accurate, Plaintiffs' FCRA and FDCPA claims fail as a matter of law.

Plaintiffs disputed the debt because they had given the Original Creditor thirty days' notice that they would vacate the Property at the end of their Leases on April 30, 2020. In response, ProCollect investigated the debt, and the Original Creditor confirmed that, despite Plaintiffs' thirty days' notice, Plaintiffs did not turn in their keys to the Property, have a move out inspection conducted, or otherwise inform the Original Creditor that they had, in fact, vacated the Property on April 30, 2020. This led the Original Creditor to believe that Plaintiffs still occupied the Property as holdover tenants into May 2020, causing Plaintiffs to incur additional rent and other charges comprising the debt as detailed on a Final Account Statement, thus verifying to ProCollect that the debt was valid and accurate. Any remaining issue regarding the debt was whether Plaintiffs owed it under the Lease, which is a legal dispute, not a factual inaccuracy to be resolved by ProCollect's reasonable investigation. Thus, even if Plaintiffs create a fact issue on whether they

owe the debt, ProCollect performed a reasonable investigation of the debt and did not violate FCRA § 1681s-2b claim and FDCPA § 1692e as a matter of law.

## IV. SUMMARY JUDGMENT EVIDENCE

Concurrently filed with this Motion is ProCollect's Appendix in Support of Motion for Summary Judgment. The items contained in the Appendix are incorporated herein by reference.

## V. STATEMENT OF UNCONTROVERTED FACTS

### A. The Debt

1. Plaintiffs entered into a *Residential Home Lease Agreement* ("Home Lease") and *Lot Lease Agreement* ("Lot Lease") (the Home Lease and Lot Lease are collectively referred to as the "Lease") with the Landlord with a lease term from May 11, 2019 to April 30, 2020 for Lot 564 at 8559 Gulf Highway, Lake Charles, Louisiana 70607 (the "Property"). Exhibits A at ¶ 3, A-1, and A-2.

2. Plaintiffs provided a *Notice from Tenant for 30 days to end Lease or Removed* [sic] on March 2, 2020 indicating that they would vacate the Property by April 30, 2020 (the "Move Out Notice"). Exhibit "A" at ¶ 4 and "A-3."

3. However, despite the Move Out Notice, Plaintiffs did not turn in their keys and vacate the Property on April 30, 2020. Exhibit "A" at ¶ 4. If they had, the on-site manager for the Property Manager would have obtained the keys and performed a move out inspection at that time. *Id*. The Move In Move Out Inspection form shows that an inspection occurred at move-in, but not at move-out. *Id*.; Exhibit "A-4." Plaintiffs also failed to provide any forwarding address. Exhibit "A" at ¶ 4. The onsite manager would also note the move out date in the Landlord's computer system. Exhibit "A" at ¶ 4. A review of the Landlord's computer system account for Plaintiffs showed a move-out date of May 31, 2020. *Id*.

4.     Because the Plaintiffs were holdovers for the month of May, 2020 and Plaintiffs failed to provide an updated notice to vacate for the end of May, it is the Landlord's policy, and allowed by the Lease, to charge rent and rent related charges for the entire month of May and one following month for June of 2020.  Exhibit "A" at ¶ 5; Exhibit "A-6"; Exhibit "A-7."

5.     As a result of the Plaintiffs' breach of the Lease, Plaintiffs owe the Landlord the amount of $2,072.80 as provided by adding the amounts from the Tenant Ledgers attached as Exhibits "A-6" and "A-7" plus the Utilities Ledger attached as Exhibit "A-8."  Exhibit "A" at ¶ 6. The amount of the debt originally forwarded to ProCollect for collection was $2,002 (the amount of the Ledgers attached as Exhibits "A-6" and "A-7") and the amount was revised to add the Ledger for unpaid utilities in April 2022.  *Id*.

**B.  Referral of the Debt for Collection**

6.     ProCollect is a third-party debt collector primarily specializing in the collection of debt resulting from breach of lease agreements.  Exhibit "B" at ¶ 3. In business since 1995 with the same majority owners and key personnel for the past twenty-eight (28) years, ProCollect is not a debt buyer, rather ProCollect is hired by apartment owners and property managers to collect outstanding receivables.  *Id*. To initiate collection of a delinquent account, ProCollect's clients typically forward, or have available in their leasing files, an account statement as proof of the amount of the alleged debt and how it was calculated, the lease application for contact information for the alleged debtor, and a copy of the lease agreement to assist with verification of debtors and responsible parties for each alleged debt.  *Id*. Because of such documentation, and based on the opinion of David Goodhart and his approximate seventeen (17) years in compliance and supervision of operations for ProCollect, lease apartment debts are verifiable and it therefore reasonable for ProCollect to rely on the accuracy of debts placed by property managers trained to

calculate and document the amounts due. *Id.*

7.      ProCollect was provided the Home Lease, Lot Lease, General Ledger for the Home Lease, and General Ledger for the Lot Lease at the time the subject debt in the original amount of $2,002 was placed by the Original Creditor with ProCollect for collection on July 21, 2020.  *Id.* at ¶ 7; *see also* Exhibits "A-1," "A-2," "A-6," and "A-7"; Exhibit "B-1."

8.      ProCollect has been collecting lease debt for Southern Choice Properties, LLC, the Property Manager for Owner since 2017, including 1,444 accounts. Exhibit "B" at ¶ 8. During that entire time period, ProCollect has not had any lawsuits or recurring issues of alleged miscalculations or other errors in preparing final account or move-out statements by the Original Creditor. *Id.* Thus, between its history with the Property Manager supplying over a thousand accurate account statements in the past and the supporting documentation supplied for Plaintiffs' Debt as identified above, ProCollect reasonably relied on the accuracy of Plaintiffs' Debt when placed for collection with ProCollect. *Id.*

**C.  Plaintiffs' Dispute of the Debt and ProCollect's Reasonable Investigation of the Debt.**

9.      ProCollect's first live contact with either Plaintiff occurred on October 1, 2020, resulting from a call from Plaintiff Gonzalez at approximately 9:39a. Exhibit "B" at ¶ 10; Exhibit "B-1" at pp. 1–2.  Gonzalez orally disputed Plaintiffs' Debt by indicating that the amount was incorrect.  Exhibit "B" at ¶ 10. As a result, the ProCollect collector correctly marked the dispute on the Account which takes a click on the "consumer dispute" button on ProCollect's collection application.  *Id.* Clicking that consumer dispute button enters the dispute directly onto the Account Notes and automatically, for any updates of information to the CRAs, adds the e-Oscar "compliance condition code" of "XB" standing for "Account information disputed by the consumer" to data furnished to the CRAs.  *Id.*; *see also* Exhibit "B-1" at p. 2.  As a result, any

credit reports issued by one of the CRAs following the next upload of information to the CRAs by ProCollect, which occurs at the beginning of each month, would show that this collection account on behalf of the Original Creditor is disputed by Plaintiffs. Exhibit "B" at ¶ 10. By making that direct dispute, that also initiated ProCollect's investigation procedure performed directly by the collector which includes confirming that ProCollect had copies of the Leases and Account Statements in its "batch file" for Plaintiffs' Account and that the amount being collected matches the amount in the Account Statements. *Id*. In addition, during that initial phone contact, Gonzalez provided "UAI" standing for "updated account information" in the form of an updated address. *Id*. *see also* Exhibit "B-1" at p. 1. As discussed *infra*, Plaintiffs failed to provide a forwarding address to the Original Creditor, so updating Gonzalez's address allowed ProCollect to forward its form "LT4" letter to Gonzalez. Exhibit "B" at ¶ 10; Exhibit "B-1" at p. 2. That form letter includes the "Statement" for the Home Lease and the Statement for the Lot Lease which comprise the total of Plaintiffs' Debt. Exhibit "B" at ¶ 10; Exhibit "B-4." By performing all of these procedures, the collector correctly followed ProCollect's policies to investigate the accuracy of Plaintiffs' Debt and send Plaintiff proof of the calculation of the amount owed by sending Plaintiff the Account Statements. Exhibit "B" at ¶ 10; *see also* Exhibits "B-1" and "B-2."

10. For each dispute received by the CRAs from consumers, the CRA will review the consumer dispute received, determine the appropriate "dispute code" from a list of e-Oscar codes, then forward the ACDV to ProCollect for response. Exhibit "B" at ¶ 11. If the consumer attaches relevant materials or documents to their dispute to the CRAs, then the CRAs when submitting the ACDVs will (typically) include images from the consumer's dispute that would assist the data furnisher, like ProCollect, with its investigation or establish why Plaintiff was disputing the account reported. *Id*.

11.     The very next day after the initial communication with Gonzalez, October 2, 2020, ProCollect processed an indirect dispute from Experian in the form of an ACDV that was initiated by Gonzalez. *Id*. at ¶ 12. ProCollect's spreadsheet of all ACDVs received on Plaintiffs' Account, Exhibit "B-5," includes all information received and updated to the CRAs in response to the ACDVs processed and investigated by ProCollect. *Id*.; Exhibit "B-5."

12.     This first ACDV is in spreadsheet row "3" and Experian concluded from its analysis of the dispute to use dispute code "23" in field (column) AK which stands for "Claims account closed" and included in the field for the basis of consumer's dispute the comment in column AM, "My contract ended in May 10th, 2020. All balances were paid in full on time." Exhibit "B" at ¶ 13; Exhibit "B-5" (ACDV in row 3, columns AK and AM, respectively). Indirect disputes that are received by ProCollect are investigated by the administrative personnel at ProCollect that are trained to investigate consumer disputes and follow ProCollect's Policies and Procedures, such as Exhibit "B-3" for investigating disputes and providing responses to the ACDVs. Exhibit "B" at ¶ 13. With this ACDV, no supporting proof was supplied by Gonzalez ("no images attached"). *Id*.; Exhibit "B-1" at p. 2. As provided in the Account Notes, ProCollect's investigative staff, performed a reasonable investigation based on the information and lack of any supporting documentation provided by Gonzalez, by contacting ProCollect's client, the Original Creditor, to verify the balance owed, reviewing ProCollect's batch file to confirm Leases signed by Gonzalez and the balance owed in the FAS (Final Account Statements). Exhibit "B" at ¶ 13; Exhibit "B-1" at p. 2.  As such reasonable investigation verified Plaintiffs' Debt, ProCollect responded to the ACDV with the e-Oscar ACDV Response Code "22" which means "updated disputed account information" as shown in column FG in row 3, and with the updated information to show

Gonzalez's dispute of the Debt, as shown by adding the "XB" code referenced above in the "CQ" column in Row 3. Exhibit "B" at ¶ 13.

13. From October 26, 2020, through November 9, 2020, ProCollect had a series of communications with Gonzalez regarding the validity of Plaintiffs' Debt. Exhibit "B" at ¶ 14; Exhibit "B-1" at pp. 3–4. After receiving ProCollect's LT4 validation letter with the Account Statements, Gonzalez alleged that Plaintiffs should not be responsible for rent and charges in May and June 2020 when the Leases expired at the end of April, 2020. ProCollect sought information and documentation to support Gonzalez's allegation and Gonzalez provided a "Notice from Tenant for 30 days to end Lease or Removed," indicating that Plaintiffs intended to vacate on April 30, 2020, (without leaving a forwarding address), and a copy of the Lease. Exhibit "B" at ¶ 14. As neither document shows when Plaintiffs actually vacated, ProCollect requested additional information for which Gonzalez replied by email on November 2, 2020, "If Gulf Stream Manor is stating that I stayed until July of 2020 THEY should be able to prove it. Otherwise I am asking to dismiss this debt." Exhibit "B" at ¶ 14; Exhibit "B-1" at p. 4; Exhibit "B-6." So, rather than provide any useful documentation, such as a new lease, a utility bill or other bill showing a new service location in one of their names, a move-out inspection report, or receipt for keys from the Original Creditor, Plaintiffs refused to provide any helpful documentation. Exhibit "B" at ¶ 14. Similarly, following ProCollect's Policies and Procedures, as shown on the Account Notes at 11/09/2020 at 9:27a.m., the collection manager (Lisa Ramos) asked the investigative staff (Kara Seahorn) to contact the Original Creditor to verify the debt, which Ms. Seahorn confirmed with Original Creditor's representative Ronnaesa Reider. Exhibit "B" at ¶ 14; Exhibit "B-1" at p. 5. Based on this additional reasonable investigation and information and documents available, ProCollect had no evidence that Plaintiffs vacated the Home Lease and Lot Lease on-time, and

ProCollect had the verification of the Original Creditor and documentation to support that Plaintiffs' Debt was accurate. Exhibit "B" at ¶ 14. Thus, ProCollect continued to verify Plaintiffs' Debt. *Id.*

14. On November 9, 2020, from Experian and on November 19, 2020, December 8, 2020, December 14, 2020, and February 8/9, 2021, from Trans Union, and on January 7, 2021, and February 2, 2021, from Equifax, ProCollect processed additional ACDVs for Plaintiffs' Account, all with varying dispute codes, typically 118 ("disputes current balance") or 12 ("claims original creditor paid"). Exhibit "B" at ¶ 15. However, none of the ACDVs provided any further information or documentation from Plaintiffs. Exhibit "B" at ¶ 15; Exhibit "B-1" at pp. 7–15; Exhibit "B-5" at rows 6, 15, 18, and 21. Each time ProCollect performed an investigation by following its Policies and Procedures, including reviewing available documentation and confirming the balance of the Debt, which is reasonable when Plaintiffs failed to provide any support for their allegations. Exhibit "B" at ¶ 15. As a result, ProCollect's ACDV dispute code response was 1 ("account information accurate as of date reported"). *Id.*

15. On April 22, 2021, at 9:43a.m., ProCollect's Account Notes show that a representative of the Original Creditor (Christine Fusselier) accessed and reviewed Plaintiffs' Account. Exhibit "B" at ¶ 16; Exhibit "B-1" at p. 15. As a result of that review, the Original Creditor revised the amount due to add Utility charges that increased Plaintiffs' Debt from $2,002 to $2,072.80. Exhibit "B" at ¶ 16. At that time, the Original Creditor added a third Account Statement in the amount of $70.80 to ProCollect's Batch File for the utilities. *Id.*

16. On August 31, 2021, September 14, 2021, and December 16, 2021, from TransUnion, and September 10, 2021, and October 14, 2021, from Experian, and October 27, 2021, from Equifax, ProCollect processed additional ACDVs for Plaintiffs' Account where images

were attached to the ACDVs, namely, letters from Plaintiffs' current attorneys that allege the same dispute—that Plaintiffs timely vacated the Home Lease and Lot Lease—but without providing any additional supporting documentation that shows when they vacated. Exhibit "B" at ¶ 17; Exhibit "B-7." Again, no useful documentation, such as a lease from their new residence, a utility bill, or other bill showing a new service location or address in one of their names, a move-out inspection report, or receipt for keys from the Original Creditor. Exhibit "B" at ¶ 17. Again, ProCollect followed the same reasonable investigation policies and procedures, and again, with a new Original Creditor representative involved from the Account Review described above, Christine Fusselier, had her investigate Plaintiffs' allegations. *Id*.; Exhibit "B-1" at p. 16, 17, 18. Based on the Original Creditor's verifications, Plaintiff continued to likewise verify Plaintiffs' Debt, as no contrary supporting documents were provided. Exhibit "B" at ¶ 17.

17.     ProCollect does not train its collectors or administrative investigation staff to attempt to resolve legal disputes, interpret lease provisions, or research state law. *Id*. at ¶ 18. Specifically, in this instance with Plaintiffs, ProCollect is not going to interpret any lease provisions or state law to determine what requirements a tenant had to perform to properly vacate the leased premises and leased lot or whether they satisfied such requirements. *Id*. Likewise, ProCollect is not going to make a legal determination regarding the amounts permitted by the lease in a tenant holdover or tenant at sufferance situation. *Id*. Property managers would be in the best position and trained to make determinations on the amounts permitted to be collected by the leases at issue, not ProCollect. *Id*. And for that reason, it is reasonable for ProCollect to rely on its clients, the original creditors/property managers, to accurately calculate the amounts due. *Id*. If there is a dispute on such an issue, it is not one that ProCollect can resolve. *Id*. Rather, ProCollect can timely notate the account as disputed by the consumer, as was done here, and wait for a resolution that

could only occur by litigation between the original creditor and the responsible parties for the debt. *Id.*

18.     Conversely, if the matter is not of lease interpretation or application of the terms of the lease to a particular situation, but a factual determination (e.g., when did the Plaintiffs actually vacate), ProCollect can review supporting documentation that would show whether the amounts in the Account Statements are incorrect. *Id.* at ¶ 19. For instance, from experience, if a tenant had a move-out form signed by the Property Manager indicating the date of inspection and move-out, a dated receipt for turning in keys, an email from a property manager acknowledging a move-out or receipt of keys, or even a lease with a start date at a different location, or bills showing services at a new address, etc., then perhaps Plaintiffs' allegations would become a factual issue that could be resolved by ProCollect. *Id.* But here, Plaintiffs never provided such supporting documentation, and ProCollect reviewed the Original Creditor's documentation, including internal documents with a move out date of May 31, 2020, instead of the end of the lease term of April 30, 2020. ProCollect investigations are reasonable and comply with the obligations of 15 U.S.C. Section 1681s-2b. *Id.*

## VI.    ARGUMENT AND AUTHORITIES

### A.    The summary judgment evidence conclusively proves that ProCollect conducted a reasonable investigation, and the information ProCollect reported to the CRAs was accurate; therefore, as a matter of law did not violate the FCRA.

#### 1.    Plaintiffs' Allegations

Plaintiffs allege that ProCollect violated the FCRA as follows:

24.     After being informed by CRAs of Plaintiff's consumer dispute of the False Tradeline, Procollect negligently failed to conduct a proper investigation of Plaintiffs' dispute as required by 15 USC 1681s-2(b).

25.     Procollect negligently failed to review all relevant information available to it and provided by CRAs in conducting its reinvestigation as required

by 15 USC 1681s-2(b) and failed to direct the CRAs to report the correct balance.

26. The False Tradeline is inaccurate and creating a misleading impression on Plaintiffs' consumer credit file with CRAs to which it is reporting such tradeline.

Doc. 1 at ¶¶ 24–26.

31. After being informed by CRAs that Plaintiff disputed the accuracy of the information it was providing, Procollect willfully failed to conduct a proper reinvestigation of Plaintiffs' dispute, and willfully failed to direct CRAs report the correct balance.

32. Procollect willfully failed to review all relevant information available to it and provided by CRAs as required by 15 USC 1681s-2(b).

Doc. 1 at ¶ 31–32.

### 2. As a matter of law, ProCollect did not violate the FCRA, because the debt ProCollect reported to the CRAs is valid.

The summary judgment evidence conclusively proves that the debt was valid. First, it is undisputed that Plaintiffs either failed to vacate the Property on April 30, 2020, or failed to follow any move out procedures to notify the Property Manager that they had, in fact vacated on that date. Despite the Move Out Notice, Plaintiffs did not turn in their keys and vacate the Property on April 30, 2020. Exhibit "A" at ¶ 4. If they had, the on-site manager for the Property Manager would have obtained the keys and performed a move out inspection at that time. *Id*. The Move In Move Out Inspection form shows that an inspection occurred at move-in, but not at move-out. *Id*.; Exhibit "A-4." Plaintiffs also failed to provide any forwarding address. Exhibit "A" at ¶ 4. The onsite manager would also note the move out date in the Landlord's computer system. Exhibit "A" at ¶ 4. A review of the Landlord's computer system account for Plaintiffs showed a move-out date of May 31, 2020. *Id*.

Because the Plaintiffs were holdovers for the month of May, 2020 and failed to provide an

updated notice to vacate for the end of May, it was the Landlord's policy, which was allowed by the Lease, to charge rent and rent related charges for the entire month of May and one following month for June of 2020.  Exhibit "A" at ¶ 5; Exhibit "A-6"; Exhibit "A-7." Therefore, Plaintiffs owe the Landlord the amount of $2,072.80 as provided by adding the amounts from the Tenant Ledgers attached as Exhibits "A-6" and "A-7" plus the Utilities Ledger attached as Exhibit "A-8." Exhibit "A" at ¶ 6. The amount of the debt originally forwarded to ProCollect for collection was $2,002 (the amount of the Ledgers attached as Exhibits "A-6" and "A-7") and the amount was revised to add the Ledger for unpaid utilities in April 2022 to $2072.80.  *Id*.; Exhibit "B" at ¶ 15. It is undisputed that the debt is valid and the amount is accurate.

> **3. Even if the information reported was incorrect, as a matter of law, ProCollect did not violate the FCRA, because it conducted a reasonable investigation of Plaintiffs' dispute of the debt before continuing to report it to the CRAs.**

The summary judgment evidence conclusively proves there were no factual inaccuracies regarding Plaintiffs' debt that ProCollect could have found through a reasonable investigation, so ProCollect's reporting of the debt to the CRAs did not violate the FCRA.

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 770 F. App'x 452, 453 (11th Cir. 2019) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007)). The FCRA governs the conduct of CRAs, as well as furnishers, the entities that supply information to CRAs. *Id*. In this case, ProCollect is a furnisher.

The FCRA prohibits furnishers from "furnish[ing] any information relating to a consumer to any [CRA] if the person knows or has reasonable cause to believe that the information is inaccurate" or "if the person has been notified by the consumer . . . that specific information is

inaccurate [and] the information is, in fact, inaccurate." 15 U.S.C. § 1681s-2(a)(1). Upon notice

that a consumer disputed the accuracy or completeness of information provided by a furnisher, the

furnisher must conduct an investigation regarding the disputed information, review all relevant

information provided by the CRA, and report the results of the investigation to the CRA. 15 U.S.C.

§ 1681s-2(b)(1). If the investigation reveals that the disputed information is incomplete, inaccurate,

or cannot be verified after reinvestigation, the furnisher must either modify, delete, or permanently

block reporting of that information. *Id*. For information determined to be inaccurate or incomplete,

the furnisher must also report those results to all CRAs. *Id*. Because a furnisher's obligation under

§ 1681s-2(b)(1)(A) arises when it receives a notice of dispute from a CRA, the relevant inquiry is

"whether the furnisher's procedures were reasonable in light of what it learned about the nature of

the dispute from the description in the CRA's notice of dispute." *Spencer v. Specialized Loan

Servicing*, No. 3:19-cv-1536-S, 2021 U.S. Dist. LEXIS 194497, at *21 (N.D. Tex. 2021) (*citing

Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009)); *accord Boggio v.

USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012).

     If a reinvestigation would not show an actual inaccuracy, then a plaintiff's claim against a

CRA fails as a matter of law. *See Chiang*, 595 F.3d at 37. "A consumer seeking relief for a violation

of § 1681s-2(b) must 'demonstrate actual inaccuracies in the furnished information that a

reasonable investigation could have discovered.'" *Hall v. LVNV Funding, LLC*, No. 6:16cv36,

2017 U.S. Dist. LEXIS 214326, 2017 WL 6403049, at *3 (E.D. Tex. Aug. 11, 2017) (quoting

*Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38 (1st Cir. 2010). There must be some causal

relationship between the CRA's allegedly unreasonable reinvestigation and the failure to discover

inaccuracies in his account. *Chiang* at 37. Plaintiffs suing a data furnishers under § 1681s-2(b)

must make the same showing—the existence of a factual inaccuracy, rather than the existence of

disputed legal questions. *Id.* at 38. Section 1681s-2(b) requires a showing of a factual inaccuracy in suits against furnishers because there are no damages if there is no inaccuracy. *Ostiguy v. Equifax Info. Servs.*, *LLC*, No. 5:16-CV-790-DAE, 2017 U.S. Dist. LEXIS 74746, 2017 WL 1842947, at *5 (W.D. Tex. May 4, 2017).

"Generally, unresolved contract disputes constitute legal disputes and not factual inaccuracies." *Belair v. Holiday Inn Club Vacations Inc*., No. 6:21-cv-165-WWB-DCI, 2022 U.S. Dist. LEXIS 235853, at *7–8 (M.D. Fla. 2022); *Holden v. Holiday Inn Club Vacations Inc*., No. 6:19-cv-2373-CEM-EJK, 2022 U.S. Dist. LEXIS 62830, at *7 (M.D. Fla. 2022) (citing *Batterman v. BR Carroll Glenridge, LLC*, 829 F. App'x 478, 481–82 (11th Cir. 2020)); *see also Wilson v. SunTrust Bank, Inc*., 533 F. Supp. 3d 1363, 1369 (S.D. Ga. 2021) (finding that the question of whether the plaintiff was contractually obligated to make loan payments was one of legal interpretation and not factual accuracy); *Baldeosingh v. TransUnion, LLC*, No. 8:20-cv-925-WFJ-JSS, 2021 U.S. Dist. LEXIS 61726, 2021 WL 1215001, at *3 (M.D. Fla. March 31, 2021) ("A consumer fails to establish a factual inaccuracy . . . by merely asserting a challenge to the legal validity of a reported debt."). Like CRAs, furnishers are "neither qualified nor obligated to resolve" matters that "turn[] on questions that can only be resolved by a court of law." *Chiang* at 37.

*Chiang* is the leading case on the issue of whether an alleged legal dispute regarding the validity or enforceability of an underlying debt renders that debt "inaccurate" for purposes of a section 1681s-2(b) claim against a furnisher.[1] Numerous courts have applied *Chiang* when addressing this issue. *See Holland v. Chase Bank United States, N.A.*, 475 F. Supp. 3d 272, 276

---

[1] While *Chiang* has not been endorsed universally, *see, e.g., Denan v. Trans Union LLC*, 959 F.3d 290, 295 (7th Cir. 2020) (noting that because furnishers, unlike CRAs, "assume[] the risk and bear the loss of unpaid debt . . . they are in a better position to determine the legal validity of a debt"); *Thompson v. Transunion Data Sols., LLC*, 2021 U.S. Dist. LEXIS 91064, 2021 WL 1923409, *2 (N.D. Ill. 2021) ("[u]nlike [CRAs], furnishers must resolve legal questions regarding the liability when necessary to resolve disputed information"), it certainly appears to represent the prevailing view when courts deal with the type of claim asserted against furnishers like Plaintiffs here. *Mohnkern*, 2021 U.S. Dist. LEXIS 218532, at *15.

(S.D.N.Y. 2020) ("[h]ere, [plaintiff's] claim of 'factual inaccuracy' relies entirely on his legal contention that his debts had been discharged due to the purported running of the relevant state's statute of limitations[;] . . . [s]uch a dispute is a legal, not a factual, challenge, and . . . plainly insufficient to support [plaintiff's] FCRA claim [under section 1681s-2(b)]"), and elsewhere, *see, e.g., Garey v. BWW Law Grp., LLC*, 2021 U.S. Dist. LEXIS 190885, 2021 WL 4521329, *16–17 (D. Md. 2021) ("[t]he fact that [plaintiff] continues to dispute the legality of the [reported] foreclosure is of no object—[furnisher defendant] is neither qualified nor obligated to resolve a question that can only be resolved by a court of law") (citation and quotations omitted); *Garland v. Marine Credit Union*, 2018 U.S. Dist. LEXIS 183619, 2018 WL 5313769, *2, 4 (E.D. Wis. 2018) ("the dispute in this case is not over a factual inaccuracy in [d]efendants' reporting but rather a legal dispute regarding the impact the [state court amortization] proceeding had on [plaintiff's] debt overall[;] . . . [a]s a result, unless and until a proper tribunal concludes the [state court amortization] proceeding eliminated the debts in their entirety or that the plan precludes the accrual of post-filing interest and other penalties, [p]laintiff cannot establish that the reported information is factually inaccurate"). "A plaintiff must show a factual inaccuracy rather than the existence of disputed legal questions to bring suit against a furnisher under § 1681s-2(b)." *Hunt*, 770 F. App'x at 458 (citation omitted).

Plaintiffs do not allege any factual inaccuracies reported by ProCollect or that ProCollect should have discovered upon its reasonable investigation. They only claim that they do not owe the debt as follows:

> 14.  The factual basis of Plaintiffs' claim is that they do not owe the debt. On September 24, 2021, Plaintiff Rolando, through his attorney, Credit Repair Lawyers of America, submitted a letter to the CRAs disputing the Collection Item. In his dispute letter, Plaintiff Rolando explained the balance comprising the Collection Item is false and detailed the items above as having been charged after the termination of the lease and not

being the Plaintiff's obligation. Plaintiff Rolando also attached supporting documents to her dispute letter proving that these charges were not his obligation.

\* \* \*

21. The Collection Item is false and misleading as Plaintiffs owes nothing to the Creditor and has fulfilled her entire obligation to it.

Doc. 1 at ¶¶ 14, 21.

Plaintiffs do not dispute that they failed to pay the charges, and ProCollect verified that information with the Original Creditor. So there was no factual inaccuracy about the debt for ProCollect's investigation to discover; there was only Plaintiffs' legal challenge to whether they owed the charges under the Leases. *See Leones v. Rushmore Loan Mgmt. Servs., LLC*, 2017 U.S. Dist. LEXIS 204157, 2017 WL 6343622, at \*3 (S.D. Fla. Dec. 11, 2017) ("Plaintiff has alleged at best a legal defense to the debt, not a factual inaccuracy in [the furnisher's] reporting."); *Wilson* at 1370 ("[B]ecause Plaintiffs' contention that Defendant furnished inaccurate information is based on a legal contention, . . . Defendant's Motion for Summary Judgment may be granted on this ground alone.").

ProCollect received the notice of Plaintiffs' dispute from the CRAs, which only included Plaintiffs' naked statement that they moved out at the end of their Lease and later provided a copy of the notice of intent to vacate. However, the documents and information the Plaintiffs provided with their dispute did not contradict the evidence provided to ProCollect by the Original Creditor as part of ProCollect's reasonable investigation that Plaintiffs had remained on the Property past the end of the Lease. The Original Creditor's evidence included the Final Account Statements and the Original Creditor's verification of the debt, ProCollect's investigation. ProCollect followed its written procedure for such investigations to review all documentation available and confirm the validity with the Original Creditor, was reasonable as a matter of law. *See e.g.*, *Palmer v. Online Info. Servs., Inc.*, Civ. A. No. 6:19-cv-00352-JCB-JDL, 2020 U.S. Dist. LEXIS

237439, 2020 WL 7658063, at *7 (E.D. Tex. Nov. 9, 2020), *adopted by* 2020 U.S. Dist. LEXIS 236612, 2020 WL 7388963 (E.D. Tex. Dec. 16, 2020) (furnisher conducted reasonable investigation by following its internal procedures). *Spencer v. Specialized Loan Servicing*, 2021 U.S. Dist. LEXIS 194497, at *22; *Palmer v. Procollect, Inc*., No. 6:19-CV-82-JDK, 2020 U.S. Dist. LEXIS 147313, at *9–11 (E.D. Tex. 2020) (ProCollect conducted reasonable investigation by "follow[ing] its policies and procedures by investigating the dispute and confirming the validity of the debt with the [Original Creditor]"). Therefore, even if Plaintiffs do not owe the debt, ProCollect's investigation was reasonable, and Plaintiffs' claim fails as a matter of law.

Without a threshold showing of inaccuracy, it follows that ProCollect, as a matter of law, did not violate section 1681s-2(b) by failing to either conduct a reasonable investigation of the disputed debt. *Mohnkern v. Equifax Info. Servs., LLC*, No. 19-CV-6446L, 2021 U.S. Dist. LEXIS 218532, at *17–18 (W.D.N.Y. 2021); *See, e.g., Spencer v. Specialized Loan Servicing, LLC*, 2021 U.S. Dist. LEXIS 194497, 2021 WL 4552548, *9 (N.D. Tex. 2021); *Butnick v. Experian Info. Sols., Inc*., 2021 U.S. Dist. LEXIS 21926, 2021 WL 395808, *1, 5 (E.D.N.Y. 2021) (dismissing plaintiff's section 1681s-2(b) claim that defendant furnisher "failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information" where plaintiff failed to sufficiently allege that furnisher provided inaccurate or misleading information). Plaintiffs' allegations depend on the incorrect assumption that they did not owe the debt and that the information reported to the credit reporting agencies (the CRAs), was "inaccurate." *See e.g.*, *Chiang* at 38 (A consumer seeking relief for violation of § 1681s-2(b) must "demonstrate actual inaccuracies in the furnished information that a reasonable investigation could have discovered."). Therefore, Plaintiffs' claim is based on a legal dispute that is not actionable under the FCRA and ProCollect is entitled to summary judgment. *Belair v. Holiday Inn Club Vacations Inc*., 2022 U.S.

Dist. LEXIS 235853, at *11; *See Hunt* at 458; *see also Mayer*, No. 6:20-cv-2283; *Holden* at *3–4.

**B. The summary judgment conclusively proves that ProCollect did not make any false or misleading representations in collection of the debt and that it conducted a reasonable investigation of the debt such that it did not violate the FDCPA as a matter of law.**

    **1. Plaintiffs' Allegations**

Plaintiffs allege that ProCollect violated the FDCPA as follows:

81.    ProCollect's foregoing acts in attempting to collect this alleged debt violated the following provisions of the FDCPA:

a.    15 U.S.C. §1692e(2)(A) by falsely representing the character, amount or legal status of a debt after Plaintiffs informed ProCollect of the inaccurate balance amount on the account; and

b.    15 U.S.C. §1692e(8) by communicating to any person credit information, which is known to be false or should be known to be false, including failure to accurately report the account balance after being asked to so by Plaintiffs.

*Id*. at ¶ 81.

    **2. As a matter of law, there was no inaccuracy in the debt information, so ProCollect did not make any false or misleading misrepresentations and, therefore, did not violate the FDCPA.**

Plaintiffs' FDCPA claim relates to ProCollect's efforts to collect the debt and, as with their FCRA claim, similarly hinges on their contention that they do not owe the debt to the Original Creditor. ProCollect is entitled to judgment as a matter of law.

To sustain a claim under the FDCPA, a plaintiff must show that "(1) she has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Ossipova v. Pioneer Credit Recovery, Inc*., 2019 U.S. Dist. LEXIS 214455, 2019 WL 6792318, *3 (S.D.N.Y. 2019) (citation omitted). Here, only the third element is in dispute; plaintiffs allege that ProCollects attempt to collect the debt violated sections 1692e, 1692e(2)(A), 1692e(5),

1692e(8), 1692e(10), and 1692f(1) of the FDCPA. Doc. 1-2 at 10–11.

Section 1692e of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Among other things, this section prohibits the "false representation of the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A), the "threat to take any action that cannot legally be taken or that is not intended to be taken," 15 U.S.C. § 1692e(5), and the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," 15 U.S.C. § 1692e(10). Moreover, the FDCPA precludes debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f, which includes the "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law," *id*. at § 1692f(1). Whether a communication violates the FDCPA is evaluated under the "least sophisticated consumer" standard, which is an "objective standard, designed to protect all consumers, the gullible as well as the shrewd." *Huebner v. Midland Credit Mgmt., Inc*., 897 F.3d 42, 51 (2d Cir. 2018) (citation and quotations omitted), *cert. denied*, 139 S. Ct. 1282, 203 L. Ed. 2d 280 (2019).

Plaintiffs do not allege any actual false or misleading misrepresentations by ProCollect. The sole basis of their claims is that they do not owe the debt as follows:

> 14. The factual basis of Plaintiffs' claim is that they do not owe the debt. On September 24, 2021, Plaintiff Rolando, through his attorney, Credit Repair Lawyers of America, submitted a letter to the CRAs disputing the Collection Item. In his dispute letter, Plaintiff Rolando explained the balance comprising the Collection Item is false and detailed the items above as having been charged after the termination of the lease and not being the Plaintiff's obligation. Plaintiff Rolando also attached supporting documents to her dispute letter proving that these charges were not his obligation.
>
> \*      \*      \*
>
> 21. The Collection Item is false and misleading as Plaintiffs owes nothing to the Creditor and has fulfilled her entire obligation to it.

Doc. 1 at ¶¶ 14, 21.

These claims fail because the summary judgment evidence conclusively proves ProCollect confirmed with the Original Creditor that the information it provided regarding the debt was correct, and ProCollect accurately reported the information to the CRAs and sought collection from Plaintiffs. As a matter of law, Plaintiffs' claim that they do not owe the debt does not mean that ProCollect's use of debt information confirmed with the Original Creditor is false. It just means Plaintiffs have an unresolved dispute with the Original Creditor. Therefore, ProCollect did not use any misrepresentations or deceptive means to collect the debt. Plaintiffs merely dispute the legal validity of the underlying debt, which, alone, does not violate the FDCPA. "[T]he FDCPA is concerned with unlawful debt collection practices, not mere disputes over the legality of the underlying debts." *Chambers*, 68 F. App'x at 715 (no FDCPA claim where plaintiff's complaint "ma[de] clear that the real issue is whether she [was] liable [for the debt at issue], not whether the defendants engaged in unlawful collection practices"), *cert. denied*, 540 U.S. 1119, 124 S. Ct. 1064, 157 L. Ed. 2d 913 (2004).

Even if the Court considered an argument that Plaintiffs presented a legal question as to the construction and interpretation of the Lease to determine whether they are liable under the Lease, there would not be a violation of the FDCPA. *See e.g., Ducrest v. Alco Collections, Inc*., 931 F. Supp. 459, 462 (M.D. La 1996) (The FDCPA "does not require an independent investigation of the information provided by clients when a debt collector tries to collect a debt, nor does it require the debt collector to dispute the creditor's construction of a contract."). However, as is in the *Palmer* case, Plaintiffs' "real complaint is with the [Original Creditor] and the charges it imposed on her." *Palmer v. ProCollect, Inc.*, 2020 U.S. Dist LEXIS 147313 at *15*. "[T]he FDCPA is concerned with unlawful debt collection practices, not mere disputes over the

legality of the underlying debts." *Chambers v. Habitat Co.*, 68 F. App'x 711, 715 (7th Cir. 2003) (no FDCPA claim where plaintiff's complaint "ma[de] clear that the real issue is whether she [was] liable [for the debt at issue], not whether the defendants engaged in unlawful collection practices"), *cert. denied*, 540 U.S. 1119, 124 S. Ct. 1064, 157 L. Ed. 2d 913 (2004). Because Plaintiffs' FDCPA claim is based on nothing more than her conclusory and self-serving assertions that they do not owe the Debt (which is an unresolved legal dispute). ProCollect is entitled to summary judgment against Plaintiffs' FDCPA claim.

As the evidence conclusively proves that the debt was valid and accurate, ProCollect, as a matter of law did not use any "false, deceptive, or misleading representations or means" in connection with collecting the debt from Plaintiffs.

### 3. Even if Plaintiffs did not owe the debt, as matter of law, ProCollect did not violate the FDCPA because it conducted a reasonable investigation of Plaintiffs' dispute of the debt before resuming collection actions.

For Plaintiffs' FDCPA §§1692e(2)(A) and 1692e(8) claims to survive summary judgment, Plaintiff must establish a material fact that ProCollect intentionally and knowingly misrepresented the "character, amount, or legal status of a debt" or used a "false representation or deceptive means to collect or attempt to collect any debt." *See* FDCPA §§1692e(2)(A) and 1692e(8).

Under the FDCPA, ProCollect may reasonably rely on the information provided to it by the Original Creditor and has no further duty to make any determination whether the Original Creditor calculated the alleged amount due correctly pursuant to the Lease. Even if ProCollect did report inaccurate information, the violation must be knowing and intentional. *See e.g.*:

- *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1174 (9th Cir. 2006):

   Within reasonable limits, Capital and Hasson were entitled to rely on their client's statements to verify the debt. *Accord Bleich v. Revenue Maximization Group, Inc.*, 233 F. Supp. 2d 496, 500–01 (E.D.N.Y. 2002), *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 392 (D. Del. 1991)

("Generally, a debt collector may reasonably rely upon information provided by a creditor who has provided accurate information in the past.").

- *Ducrest v. Alco Collections*, 931 F. Supp. 459, 462 (M.D. La. 1996):

  Remembering the object of the FDCPA, and reading it as a whole, to state a claim under § 1692e(2), plaintiff would have to show that defendant knowingly misrepresented the character, amount, or legal status of the debt. The language "false representation of the character, amount, or legal status of any debt" in § 1692e(2)(A) must be read in conjunction with what it defines—a "false, deceptive, or misleading representation." These terms clearly contemplate a knowing and intentional act. It is undisputed that defendant relied on the information provided to it by Broadmoor Plantation Apartments in demanding payment of this debt. Plaintiffs' claim under this section of the FDCPA has no merit because she has not shown that any misrepresentation of the amount of the debt claimed was knowing or intentional.

- *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1140–41 (N.D. Ill. 1998):

  The *Jenkins* court makes clear that a debt collector has the right to rely on information provided by the client-creditor, and has no obligation to undertake an independent debt validity investigation. *See* 124 F.3d at 833–34 (recognizing that neither attorneys acting as debt collectors nor non-lawyer debt collectors are required to "conduct an independent investigation into the legal intricacies of the client's contract with the consumer"); *see also Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992); *Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 462 (M.D. La. 1996); *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 392–93 (D. Del. 1991).

- *Avery v. Gordon*, No. 08-139-HU, 2008 U.S. Dist. LEXIS 86811, at *28–29 (D. Or. 2008)):

  [T]he FDCPA does not require an independent investigation of the information provided by clients when a debt collector tries to collect a debt. The Gordon defendants rely on *Hulse v. Ocwen Federal Bank*, 195 F. Supp.2d 1188, 1210 (D. Or. 2002), and on the Ninth Circuit decision in *Clark*. In *Clark*, the court quoted with approval district court cases from other jurisdictions holding that a debt collector may reasonably rely upon information provided by a creditor who has provided accurate information in the past. The *Clark* court also held, consistent with the *Hulse* decision, that the FDCPA does not impose upon debt collectors any duty to investigate independently the claims presented by the creditor. The *Clark* case adopted "as a baseline" the holding of the Fourth Circuit in *Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999) that at a minimum, "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is

owed." *Clark*, 460 F.3d at 1173–74.

Here, when ProCollect investigated Plaintiffs' dispute of the debt, the Original Creditor provided ProCollect with a Final Account Statement detailing the amounts owed and informed ProCollect that Plaintiffs did not turn in their keys to the Property, have a move out inspection conducted, or otherwise inform the Original Creditor that they had, in fact, vacated when they said they would. The Original Creditor's evidence supported the debt and was not directly contradicted by the notice Plaintiffs provided to the Original Creditor stating that they *intended* to vacate the Property thirty days later. A "reasonable inspection" did not require ProCollect to independently investigate and resolve Plaintiffs' dispute the debt. As the Original Creditor's information supported the debt, ProCollect was entitled to rely on it.

In addition, ProCollect's CBR uploads to the CRAs conclusively establish that ProCollect correctly reported the different amounts to the CRAs. ProCollect has been collecting lease debt for Southern Choice Properties, LLC, the Property Manager for Owner since 2017, including 1,444 accounts. Exhibit "B" at ¶ 8. During that entire time period, ProCollect has not had any lawsuits or recurring issues of alleged miscalculations or other errors in preparing final account or move-out statements by the Original Creditor. *Id*. Thus, between its history with the Property Manager supplying over a thousand accurate account statements in the past and the supporting documentation supplied for Plaintiffs' Debt as identified above, ProCollect reasonably relied on the accuracy of Plaintiffs' Debt when placed for collection with ProCollect. *Id*.

PRAYER

WHEREFORE, Defendant ProCollect, Inc. respectfully request that the Court grant it summary judgment as a matter of law on all of Plaintiffs' claims against it, that Plaintiffs' claims be dismissed with prejudice and with costs taxed against Plaintiffs, and for such other relief to

which ProCollect may be justly entitled.

Dated: April 21, 2023

Respectfully submitted,

By: _John W. Bowdich_

JOHN W. BOWDICH
State Bar No. 00796233

JOHN W. BOWDICH
State Bar No. 00796233
BOWDICH & ASSOCIATES, PLLC
8150 N. Central Expy., Suite 500
Dallas, Texas 75206
(214) 307-9500 – Telephone
(214) 307-5137 – Telecopy
jbowdich@bowdichlaw.com

ATTORNEYS FOR DEFENDANT
PROCOLLECT, INC.

## CERTIFICATE OF SERVICE

On April 21, 2023, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, Houston Division using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) as follows:

Gary A. Hansz, Esq.                    VIA ECF
CREDIT REPAIR LAWYERS OF AMERICA
39111 Six Mile Rd., Ste. 142
Livonia, MI 48152
(248) 353-2882

ATTORNEYS FOR PLAINTIFFS

Julia Nicole Camp, Esq.                VIA ECF
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
(832) 239-3758

ATTORNEY FOR DEFENDANT, EXPERIAN
INFORMATION SOLUTION, INC.

Forrest M. Seger III, Esq.             VIA ECF
CLARK HILL, P.C.
2301 Broadway St.
San Antonio, Texas 78215
(210) 341-7788

ATTORNEY FOR DEFENDANT, EQUIFAX
INFORMATION SERVICES, LLC


By: _____
        John W. Bowdich