United States District Court
Southern District of Texas

**ENTERED**

July 31, 2023

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KARLA RUIZ and ROLANDO GONZALEZ, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL CASE NO. H-21-3851 |
| EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and PROCOLLECT, INC., | § § § § § | |
| Defendants. | § § | |

**MEMORANDUM AND OPINION**

Karla Ruiz and Rolando Gonzalez sued three credit reporting agencies and a debt collector for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p.  The plaintiffs settled their claims against the credit reporting agencies, and those defendants have been dismissed.  (Docket Entry Nos. 61, 62).  The plaintiffs and the debt collector, ProCollect, have cross-moved for summary judgment on the remaining claims.  (Docket Entry Nos. 67, 70).  Based on the parties' briefs, the record, and the relevant law, the court grants the motions in part and denies them in part.  The reasons are set out below.

I.     **Background**

This case involves a purported debt arising from two lease agreements for a trailer home and its lot in Lake Charles, Louisiana.  Each lease ran from May 2019 through April 30, 2020.  The Home Lease provided:

> Lessee shall have the right to elect to extend the lease term for an additional 12 month term at the current rental rate.  Lessee may exercise the right to extend the term of the Lease by providing Lessor with written notice of the election at least 30 days prior to the termination of the lease term.  Should Lessee not provide Lessor

with such notice, the Lease shall be automatically extended on a month-to-month basis; which may be terminated by either party upon 30 days written notice to the other party.

(Docket Entry No. 67-1 ¶ 2).  The Lot Lease contained nearly identical language:

Lessee shall have the right to elect to extend the lease term for an additional 6 month term at the current rental rate.  Lessee may exercise the right to extend the term of the Lease by providing Lessor with written notice of the election at least 30 days prior to the termination of the lease term.  Should Lessee not provide Lessor with such notice, the Lease shall be automatically extended on a month-to-month basis; which may be terminated by either party upon 30 days written notice to the other party.

(Docket Entry No. 67-2 ¶ 2).

In March 2020, the plaintiffs notified the landlord's property manager that they would vacate the property at the end of the lease term, April 30, 2020.  (Docket Entry No. 67-3).  Rolando Gonzalez testified that he personally gave the termination notice to an employee at the management office, Diana Boerama.  (Docket Entry No. 67-4 at 30:19–24).

A few days later, the property manager emailed the plaintiffs and other tenants that the management offices would be closed because of the Covid-19 pandemic.  (Docket Entry No. 67-5 at 1).

Gonzalez testified that the plaintiffs called the property manager and asked how to return the house key while the offices were closed.  The plaintiffs were told to put the key in the office drop box in an envelope labeled with their names and unit numbers.  (Docket Entry No. 67-4 at 165:12–166:4).  Gonzalez testified that the plaintiffs rented a moving truck, moved out, and returned the keys on April 23, 2020.  (Docket Entry No. 67-4 at 24:13–25, 166:12–16; see also Docket Entry Nos. 67-7 (a copy of the U-Haul equipment contract with a "rental out date" of April 22, 2020), 67-6 (a screenshot showing storage unit rentals made by Ruiz with move-in dates of April 21, 2020)).

The landlord's files show a move-out date of May 31, 2020. (Docket Entry No. 71 at App. 34–36). The landlord charged rent and related charges for both May and June based on a holdover tenancy. These charges resulted in total purported indebtedness of $2,072.80. (*See* Docket Entry No. 71 at App. 38, 41, 45).

In July 2020, the property manager engaged ProCollect to collect the plaintiffs' debt. The property manager provided ProCollect with the home lease, the lot lease, and the general ledgers for both leases.

In August, Karla Ruiz, through counsel, sent a letter to Trans Union and Experian disputing the debt reported by ProCollect. In September, Gonzalez sent a letter to all three credit reporting agencies disputing the debt. The plaintiffs' letters stated that they timely moved out of the home. The plaintiffs attached the lease termination notice to each letter.

In October 2020, Gonzalez contacted ProCollect to dispute the amount of the debt. ProCollect noted that the amount was disputed and informed the credit reporting agencies of the dispute at the beginning of the following month, when ProCollect customarily provided information to credit reporting agencies.

In November, Gonzalez emailed the leases and lease termination notice to ProCollect to show that the plaintiffs did not owe outstanding unpaid debt. ProCollect responded by sending the ledgers to the plaintiffs and requesting again the $2,072.80 amount.

## II.     The Rule 56 Legal Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021)

(quoting reference omitted).   The moving party "always bears the initial responsibility of

informing the district court of the basis for its motion[] and identifying" the record evidence

"which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323 (1986).

　　"When 'the non-movant bears the burden of proof at trial,' a party moving for summary

judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the

burden of demonstrating by competent summary judgment proof that there is [a dispute] of

material fact warranting trial." *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022)

(alteration in original) (quoting reference omitted).   "However[,] the movant 'need not negate the

elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015,

1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en

banc) (per curiam)).   "If 'reasonable minds could differ' on 'the import of the evidence,' a court

must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

　　After the movant meets its Rule 56(c) burden, "the non-movant must come forward with

'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th

576, 581 (5th Cir. 2021) (quoting references omitted).   The nonmovant "must identify specific

evidence in the record and articulate the 'precise manner' in which the evidence" aids their case.

*Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference

omitted).   Of course, all reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City*

*of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022).   But a nonmovant "cannot defeat summary judgment

with 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

**III.     Analysis**

**1.     The Fair Debt Collection Practices Act**

The Fair Debt Collection Practices Act forbids debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  Specifically, the Act proscribes:

> (2) The false representation of—
>
> > (A) the character, amount, or legal status of any debt; or
> >
> > (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
>
> . . .
>
> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

*Id.*

In general, a plaintiff does not need to show intentional or negligent conduct on the part of the debt collector.  *See, e.g.*, *Douglas v. Select Portfolio Servicing, Inc.*, No. CIV.A. 4:14-1329, 2015 WL 1064623, at *4 (S.D. Tex. Mar. 11, 2015) ("To state a claim under the FDCPA, Plaintiff must show (1) that he was the object of collection activity arising from a consumer debt; (2) that Defendant is a debt collector as defined by the FDCPA; and (3) that Defendant engaged in an act or omission prohibited by the FDCPA.").  Some courts have described the FDCPA as a "strict liability" statute.  *Manuel v. Merchants & Prof'l Credit Bureau, Inc.*, 402 F. Supp. 3d 361, 368 (W.D. Tex. 2019) (collecting cases), *aff'd*, 956 F.3d 822 (5th Cir. 2020).  The court evaluates the debt collector's conduct from the perspective of an "unsophisticated or least sophisticated

consumer." *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 669 (5th Cir. 2012) (quoting *Goswami*

*v. Am. Collections Enter.*, 377 F.3d 488, 495 (5th Cir. 2004)).

The plaintiffs argue that the termination notice given to the landlord "prevented the lease

from continuing on a month to month basis." (Docket Entry No. 67 at 16).  Had the plaintiffs not

moved out by the end of April, they would have been considered "tenants at sufferance" under

Texas law.  (*Id.* at 17).  In such a tenancy, lease terms do not control; the landlord instead may

seek a judgment for the "reasonable rental value of the property during the holdover period."  *Id.*

Because the landlord did not obtain a judgment against the plaintiffs, the debt sought by ProCollect

had no legal basis and was therefore "a misrepresentation of the amount, character and legal status"

of the debt in violation of the Act.  The plaintiffs also argue that ProCollect violated the statue by

communicating false information to the credit reporting agencies.  ProCollect knew or should have

known this information was false because the documents ProCollect possessed reflected "charges

all related to *post lease* activity," which the plaintiffs disputed.  (*Id.* at 19).  ProCollect argues that

a dispute over the validity of the underlying debt does not mean that a debt collector violates the

statue when it seeks to collect the disputed debt.  (Docket Entry No. 70 at 22).

The court does not agree with the plaintiffs' interpretation of the relevant lease provisions.

Under Texas law, the court first considers the plain meaning of the operative contract language.[1]

*Endeavor Energy Res., L.P. v. Energen Res. Corp.*, 615 S.W.3d 144, 149 (Tex. 2020).  Both leases

state:

> Lessee may exercise the right to extend the term of the Lease by providing Lessor
> with written notice of the election at least 30 days prior to the termination of the

---

[1] Regardless of what law applies, Louisiana law also directs courts to interpret contracts according to their "plain, ordinary, and generally prevailing meaning." *Couvillion Group, L.L.C. v. Plaquemines Parish*, 295 So. 3d 400, 402 (La. 2020).

> lease term.  Should Lessee not provide Lessor with such notice, the Lease shall be
> automatically extended on a month-to-month basis . . . .

(Docket Entry Nos. 67-1 § 2, 67-2 § 2).  The "such notice" referred to in this provision is not a

notice of termination.  The lease speaks only of a "written notice of the election" to extend the

term of the lease by either 12 or six months.  This written notice is how a lessee may exercise "the

right to elect to extend the lease term."  If that election is not delivered, the lease is "automatically

extended on a month-to-month basis."  The delivery of a notice of termination, in other words, did

not prevent the automatic extension of the lease.  While the plaintiffs argue that they did vacate

the unit by April 30, 2020, their argument that the debt was invalid because any holdover tenancy

would be a tenancy at sufferance conflicts with the plain text of the leases.

The Fifth Circuit does not appear to have decided whether an FDCPA claim may be

maintained by a debtor disputing the existence of the debt.  In *Daugherty v. Convergent

Outsourcing, Inc.*, 836 F.3d 507 (5th Cir. 2016), the debt collector sent the plaintiff a letter offering

to "settle" a credit card debt for which the statute of limitations had run.  *Id.* at 509.  There, the

court held that an offer to "settle" a time-barred debt, "without acknowledging that such debt is

judicially unenforceable, can be sufficiently deceptive or misleading to violate the FDCPA." *Id.* at

511.  Misrepresenting or omitting information that a valid debt is judicially unenforceable

misrepresents the "legal status" of the debt.  Similarly, a debt collector "improperly identifying

[itself] as the owner of a debt is certainly a misrepresentation of that debt's legal status." *Cox v.

Hilco Receivables, L.L.C.*, 726 F. Supp. 2d 659, 666 (N.D. Tex. 2010).  A debt collector that

attempts to collect a debt that was never owed similarly violates § 1692e(2)(A).  *In re Trevino*,

615 B.R. 108, 138 (Bankr. S.D. Tex. 2020).  These cases show that attempts to collect debts that

are valid but time-barred from judicial enforcement, valid but belong to some other entity, or valid

but owed to some other entity, are all unlawful.  They all concern the possibility that a collector or

7

consumer may be confused as to what debt is owed and to whom.  They do not all turn on whether there is a valid, outstanding debt.

ProCollect points to the Seventh Circuit's decision in *Chambers v. Habitat Co.*, 68 F. App'x 711 (7th Cir. 2003).  There, the plaintiff's "claims ar[o]se from the attempts of her apartment building's management agent . . . to obtain reimbursement for the owner's attorneys' fees by adding charges for 'legal collections' to monthly invoices it sent for rent." *Id.* at 715.  The plaintiff contended that such charges were prohibited by state and federal law. *Id.*  The court affirmed the district court's dismissal of the claim "because the FDCPA is concerned with unlawful debt collection practices, not mere disputes over the legality of the underlying debts." *Id.*

The question presented by both *Chambers* and by this case is whether a plaintiff disputing the validity of a debt may recover from a debt collector for falsely representing that the debt is valid.  The statute provides that a debt collector may not mispresent the "legal status of any debt." The *Chambers* court begged the question by assuming that a claim alleging that a debt collector misrepresented the lawfulness of a debt through attempts to collect was not a misrepresentation over the "legal status of a debt."  The court cannot distinguish this situation from cases in which debt collectors have attempted to collect time-barred debts.  To hold otherwise would put debt collectors attempting to collect debts that undisputedly exist but are not enforceable in court in a worse position than debt collectors attempting to collect debts that may never have been valid. Not only must the collector in the former situation not affirmatively misrepresent the enforceability of the debt, the *Daugherty* court held that the collector must affirmatively *disclose* the debt's unenforceability.

ProCollect next argues that it cannot be held liable under the FDCPA because it conducted a reasonable investigation into the debt. (Docket Entry No. 70 at 23). ProCollect points to authorities holding that a collector may reasonably rely on its client's statements regarding the validity of any debt it collects. (*Id.* at 23–25 (collecting cases)). It also argues that, to be held liable, the plaintiffs must show that the debt collector knowingly and intentionally reported inaccurate information.

In response, the plaintiffs argue that these arguments are not material to an FDCPA dispute, because the only defense to an FDCPA violation is the "bona fide error" defense. (Docket Entry No. 73 at 24). That defense provides, "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). The plaintiffs argue that ProCollect has not raised this defense, and, in any event, is not entitled to it because it does not concede its collection attempts were made in error.

The court agrees that ProCollect has not raised the § 1692k(c) defense. And the bulk of authority suggests that the FDCPA does not require knowing or intentional conduct to create liability. The FDCPA does speak to the question of disputed debts in § 1692g. The parties have not addressed this section of the FDCPA, but it is mentioned in some of the cited authorities. *See, e.g.*, *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006). Section 1692g requires debt collectors to send

> a written statement to debtors explaining that: (1) unless the debtor "disputes the validity of the debt" within 30 days, the debt collector will assume the debt is valid; (2) that if the debtor notifies the collector that she is disputing the debt in writing within the 30 day period, "the debt collector will obtain verification of the debt [from the creditor] . . . and a copy of [the] verification . . . will be mailed to the consumer"; and (3) that upon debtor's request the debt collector will give him the

9

name and address of the original creditor, if the original creditor is different from the current one."

*Peter v. GC Services L.P.*, 310 F.3d 344, 348 (5th Cir. 2002) (quoting 15 U.S.C. § 1692g(a)(3)–(5)).  If the debtor "requests verification of the debt or information on the original creditor, the debt collector must 'cease collection of the debt . . . until the [requested information] is mailed to the consumer."  (*Id.* (quoting 15 U.S.C. § 1692g(b)).  Section 1692g provides a procedure to resolve disputes of the kind at issue here.  This section permits debt collection attempts to resume after the information regarding the veracity of the debt is provided to the debtor.

The summary judgment record reflects that ProCollect sent a letter to the plaintiffs regarding the debt on July 21, 2020.  (Docket Entry No. 71 at App. 61).  That letter was returned as undeliverable to the plaintiffs' former address.  (*Id.*).  Once the plaintiffs learned that ProCollect had reported the debt to the credit reporting agencies, Gonzalez sent documents to ProCollect to show that the debt was invalid.  (Docket Entry No. 73 at 8 ¶ 16).  ProCollect then contacted Gonzalez by phone on October 1, 2020, and Gonzalez again disputed the debt.  (*Id.* at 8 ¶ 17; Docket Entry No. 70 ¶ 9).  After this conversation, ProCollect sent a debt verification collection letter, dated October 1, 2020, reaffirming its belief that the debt was valid and attaching supporting documents.  (Docket Entry No. 71 at App. 106).  The letter does not appear to contain the required disclosures.

Section 1692g does not state how compliance (or noncompliance) with its instructions interacts with the substantive prohibitions of § 1692e.  The purpose of this section is explained as follows:

> The Fair Debt Collection Practices Act seeks to protect debtors from "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).  Section 1692g serves this end by giving debtors a way to dispute or verify their supposed debts.  And by obligating creditors to tell debtors how to do that, subsections (a)(4) and (5) reduce the risk that debtors will

inadvertently lose the protections given to those who observe the statutory requirements.

*Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333–34 (7th Cir. 2019) (Barrett, J.).  Section 1692g attempts to ensure that debtors have an opportunity to dispute their debts, and debt collects an opportunity to correct their records, prior to litigation.  *See Russell v. Absolute Collection Servs.*, Inc., 763 F.3d 385, 394 (4th Cir. 2014) ("[M]any debtors will prefer to avail themselves of the prompt and inexpensive validation procedures as an alternative to the costly and time-consuming method of filing a claim in federal court.").

But compliance with § 1692g does not provide a debt collector with a safe harbor to liability under § 1692e.  *Vangorden v. Second Round, L.P.*, 897 F.3d 433, 439 (2d Cir. 2018) ("Like the Third and Fourth Circuits, we reject this argument because nothing in the text of the FDCPA suggests that a debtor's ability to state a § 1692e or § 1692f claim 'is dependent upon the debtor first disputing the validity of the debt in accordance with § 1692g.'"); *Russell*, 763 F.3d at 392 ("Put simply, had Congress intended for a debt collector's liability under the FDCPA to hinge upon a debtor's compliance with the validation provisions found in § 1692g, we suspect that it would have so indicated with conspicuous language to that effect.").  Section 1692g itself states that "[t]he failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer."  15 U.S.C. § 1692g(c).  Even assuming ProCollect observed the procedures of § 1692g, the plaintiffs' claims would not be barred.

There is a dispute of fact—the date of the plaintiffs' move out—material to determining the validity of the debt.  This dispute is one over the legal status of the debt.  The court accordingly denies ProCollect's motion for summary judgment on the plaintiffs' FDCPA claims related to the debt collection attempts.

11

But the court grants the motion with respect to the plaintiffs' claim under § 1692e(8).  Even if courts view other provisions of the FDCPA as not requiring a showing of negligence, a claim under subsection (8) explicitly requires plaintiffs to demonstrate that ProCollect was negligent in making its reports to the credit reporting agencies.   15 U.S.C. § 1692e(8) (prohibiting "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.").  The record does not support any inference that ProCollect knew or should have known that the debt reported to it was false.

### 2.      The Fair Credit Reporting Act

The Fair Credit Reporting Act imposes duties on those who furnish information to consumer reporting agencies in the event any information is disputed.  15 U.S.C. § 1681s-2(b)(1). After receiving notice of a dispute "with regard to the completeness or accuracy of any information," *id.*, the information provider "shall" take the following steps:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>
> > (i) modify that item of information;
> >
> > (ii) delete that item of information; or
> >
> > (iii) permanently block the reporting of that item of information.

*Id.*  A furnisher is required to provide "accurate" information to credit bureaus.  Accuracy is defined by regulation:

> (a) Accuracy means that information that a furnisher provides to a consumer reporting agency about an account or other relationship with the consumer correctly:
>
>> (1) Reflects the terms of and liability for the account or other relationship;
>>
>> (2) Reflects the consumer's performance and other conduct with respect to the account or other relationship; and
>>
>> (3) Identifies the appropriate consumer.

12 C.F.R. § 1022.41.  But "[a] furnisher is not required to investigate a direct dispute if the furnisher has reasonably determined that the dispute is frivolous or irrelevant," including if "[t]he consumer did not provide sufficient information to investigate the disputed information."  *Id.* § 1022.43(f)(1)(i).

The plaintiffs argue that the "plain meaning of 'investigation' clearly requires some degree of careful inquiry by creditors."  (Docket Entry No. 67 at 22).  They argue that ProCollect's duty to investigate was triggered by three communications, in August through October 2020.  (*Id.*). They argue that ProCollect's policy precludes ProCollect from performing any *re*investigation of disputed debts, because the policy allows employees to "rely on the Creditor's documents and representations when reporting the debt" in the face of conflicting information from the creditor and debtor.  (*Id.* at 23)

ProCollect argues that the summary-judgment evidence "proves that the debt was valid," precluding the plaintiffs' FCRA claims.  It points to the fact that the property manager did not conduct a move out investigation and that the property manager's computer system does not show a timely move out.  (Docket Entry No. 70 at 13).  ProCollect also argues that the plaintiffs' notice of dispute from the credit bureaus "only included Plaintiffs' naked statement that they moved out

at the end of the Lease and later provided a copy of the notice of intent to vacate." (*Id.* at 18). This information, ProCollect argues, did not contradict the evidence provided by the original creditor obtained through ProCollect's initial investigation. (*Id.*).

ProCollect's statement that there is no dispute of fact about when the plaintiffs moved out is incorrect. The plaintiffs testify that they moved out before the end of the lease. The testimony is valid summary-judgment evidence. The plaintiffs also point to documents showing their rental of a storage unit and moving truck before the end of the lease. A jury could find that the property manager simply failed to conduct a move out inspection or otherwise verify that the plaintiffs had timely moved out.

ProCollect also points to *Chiang v. Verizon New England, Inc.*, 595 F.3d 26 (1st Cir. 2010), which it characterizes as the leading case on whether a disputed debt may serve as the basis for an FCPA claim under § 1681s-2(b)(1). The *Chiang* court held that it could not. *Chaing*, 595 F.3d at 38 (holding that a plaintiff must show "*factual* inaccuracy, rather than the existence of disputed legal questions."). ProCollect also acknowledges that *Chiang* is not universally accepted among the circuit courts of appeal. For example, the Seventh Circuit distinguishes between the responsibilities of credit reporting agencies and furnishers. *See Denan v. Trans Union LLC*, 959 F.3d 290 (7th Cir. 2020). The *Denan* court noted that 12 C.F.R. § 1022.41(a), which requires a furnisher to report information that "[r]eflects the terms of and liability for the account," applies only to furnisher and therefore declined to impose a similar burden on credit reporting agencies. *Denan*, 959 F.3d at 295 ("Neither the FCRA nor its implementing regulations impose a comparable duty upon consumer reporting agencies, much less a duty to determine the legality of a disputed debt.").

14

The court believes that 12 C.F.R. § 1022.41(a) demands that a furnisher investigate the legal validity of the debt.  The uncontroverted testimony of ProCollect's corporate representative shows that ProCollect did not consider the legal validity of the debt but relied entirely on the statements of the plaintiffs' former property manager.  For example, ProCollect's representative testified:

> Q: Does ProCollect know the legal basis for these rent and fees?
>
> A: ProCollect . . . doesn't interpret.  That's a legal conclusion that ProCollect doesn't do.  ProCollect relies on the statements made by its client and reliance [*sic*] on those statements.

(Docket Entry No. 67-14 at 43:10–15).  Because ProCollect did not apparently consider the legal validity of the debt, its investigation was unreasonable as a matter of law.  Furthermore, a practice of refusing to consider the legal validity of a debt represents willful noncompliance, exposing ProCollect to damages under § 1681n(a).

But, under the circumstances, the court believes that refusing punitive damages in this situation is appropriate.  15 U.S.C. § 1681n(a)(2) (permitting, for willful violations, "such amount of punitive damages as the court may allow").  Ultimately, whether the plaintiffs are liable on the debt turns on whether they timely moved out.  That is a disputed fact in this lawsuit—and one that could not have been resolved by the documents received by ProCollect.  This is not a case in which the invalidity of the debt is not subject to question or might be ascertained from documents alone.  It will rely on the factfinder's evaluation of the plaintiffs' testimony and evidence indirectly supporting their testimony.  Nothing in the plaintiffs' documents submitted to ProCollect or to this court finally resolves the question of the debt's validity, such that punitive damages would be appropriate.

The court grants the plaintiffs' motion for summary judgment on liability with respect to their FCPA claims.  The court also grants ProCollect's motion for summary judgment on the punitive damages claims.

**IV.      Conclusion**

The court grants ProCollect's motion for summary judgment in part.  The plaintiffs' claims for punitive damages under the FCPA are dismissed, as are their claims for violations of subsection (8) of the FDCPA.

The plaintiffs' motion for summary judgment is granted in part.  The court awards judgment to the plaintiffs with respect to ProCollect's liability on the FCPA claims.

The motions are otherwise denied.

SIGNED on July 31, 2023, at Houston, Texas.

Lee H. Rosenthal
United States District Judge